

1  SCHLICHTER & SHONACK, LLP
   KURT A. SCHLICHTER (CA SBN 172385)
2  STEVEN C. SHONACK (CA SBN 179395)
   JAMIE L. KEETON (CA SBN 265267)
3  3601 Aviation Boulevard, Suite 2700
   Manhattan Beach, CA 90266
4  Telephone: (310) 643-0111
   Fax: (310) 643-1638
5  kas@sandsattorneys.com
   scs@sandsattorneys.com
6  jlk@sandsattorneys.com

7
   Attorneys for Defendants CARMAX
8  AUTO SUPERSTORES
   CALIFORNIA, LLC, SANTANDER
9  CONSUMER USA INC., and
   SAFECO INSURANCE COMPANY
10

11            UNITED STATES DISTRICT COURT

12            CENTRAL DISTRICT OF CALIFORNIA

13

14  TRAVIS Z. GONZALES, an individual,)  USDC No.: SACV13-1391- CJC
                                        )                    (RNBx)
15            Plaintiff,                )
                                        )
16                                      )  NOTICE OF REMOVAL OF
                                        )  ACTION PER 28 U.S.C. § 1441(b)
17       v.                             )  [DIVERSITY]
                                        )
18  CARMAX AUTO SUPERSTORES,            )
19            LLC, a Virginia           )
                                        )
20  Limited Liability Company;          )
    SANTANDER CONSUMER USA,             )
21  INC., an Illinois Corporation; SAFECO )
    INSURANCE COMPANY OF                )
22  AMERICA, a New Hampshire            )
23  Corporation; and DOES 1 through 75, )
24  inclusive,                          )
                                        )
25       Defendants.                    )
                                        )
26
27       TO THE CLERK OF THE ABOVE-ENTITLED COURT:
28
                                   1
    NOTICE OF REMOVAL OF ACTION PER 28 U.S.C. § 1441(b)
                      [DIVERSITY]

PLEASE TAKE NOTICE that defendants CarMax Auto Superstores California, LLC, Santander Consumer USA Inc., and Safeco Insurance Company of America hereby removes to this Court the state court action described below.

1.     On July 25, 2013, an action was commenced against defendants in the Superior Court of California, County of Orange, Case No. 30-2013-00664579-CU-CO-CJC, entitled *Travis Z. Gonzales, an individual v. CarMax Auto Superstores California, LLC, a Limited Liability Company; Santander Consumer USA, Inc., an Illinois Corporation; Safeco Insurance Company of America, a New Hampshire Corporation; and DOES 1 through 75, inclusive.* A true and correct copy of the Complaint in the above-described action is attached hereto as Exhibit "A." The Complaint was not served on any defendant.

2.     On August 8, 2013, service was made on defendant CarMax Auto Superstores California, LLC, of the Summons and First Amended Complaint in the above-described action. A true and correct copy of the Summons and First Amended Complaint, and associated orders and notices from the state court concurrently served therewith, are attached hereto as Exhibit "B." No further proceedings have been had in the state court action.

2

**NOTICE OF REMOVAL OF ACTION PER 28 U.S.C. § 1441(b)**
**[DIVERSITY]**

3.     The above-described action is a civil action of which this court has original jurisdiction under the provisions of Title 28, Section 1332 of the United States Code, and is one that may be removed to this court by defendants, pursuant to Title 28, Section 1441 of the United States Code, in that it is a civil action wherein the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states, according to the following facts:

    a.     Plaintiff Travis Z. Gonzales, at the time this action was commenced, was and still is a citizen of the County of Orange, State of California.

    b.     Defendant CarMax Auto Superstores California, LLC, at the time this action was commenced, was and still is a limited liability company organized under the laws of the Commonwealth of Virginia, with its principal place of business in the Commonwealth of Virginia, and was not and is not organized under the laws of the State of California, wherein this action was brought.

3

**NOTICE OF REMOVAL OF ACTION PER 28 U.S.C. § 1441(b)**
**[DIVERSITY]**

c. The sole member of defendant CarMax Auto Superstores California, LLC, is CarMax Auto Superstores West Coast, Inc. At the time this action was commenced, CarMax Auto Superstores West Coast, Inc., was and still is a corporation incorporated under the organized under the laws of the Commonwealth of Virginia, with its principal place of business in the Commonwealth of Virginia, and was not and is not incorporated under the laws of the State of California, wherein this action was brought.

d. Defendant Santander Consumer USA Inc., at the time this action was commenced, was and still is a corporation organized under the laws of the State of Illinois, with its principal place of business in the State of Texas, and was not and is not organized under the laws of the State of California, wherein this action was brought.

e. Defendant Safeco Insurance Company of America, at the time this action was commenced, was and still is a corporation organized under the laws of the State of New Hampshire, with its principal place of business in the Commonwealth of

4

**NOTICE OF REMOVAL OF ACTION PER 28 U.S.C. § 1441(b) [DIVERSITY]**

Massachusetts, and was not and is not organized under the laws of the State of California, wherein this action was brought.

f.    The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, for the following reasons:

i.    On August 8, 2013, plaintiff served a Statement of Damages, pursuant to California Code of Civil Procedure § 425.115, indicating that plaintiff is seeking $49,000 in actual damages and $25,000 in punitive damages while reserving the right to "seek and obtain additional damages" against defendants.  A true and correct copy of the Statement of Damages is attached hereto as Exhibit "C."  In addition, plaintiff is seeking to recover attorney's fees in three of the four causes of action asserted in the First Amended Complaint pursuant to statute.  (First Amended Complaint, ¶¶ 56, 70)

ii.    Plaintiff is seeking injunctive relief against defendant CarMax, including an order for equitable monetary relief "so as to preclude the retention of all ill-gotten monies

**NOTICE OF REMOVAL OF ACTION PER 28 U.S.C. § 1441(b)**
**[DIVERSITY]**

by CarMax or so as to restore any monies wrongfully obtained by CarMax to Plaintiff." (First Amended Complaint, ¶ 97)  CarMax has analyzed the costs of compliance of the equitable relief sought, and the lost benefits to defendant appurtenant thereto, and the cost to defendant of such injunctions and orders if entered against it, combined with the actual and punitive damages sought, and the claimed attorney's fees, would significantly exceed $75,000.

WHEREFORE, defendants pray that the above action now pending against it in the Superior Court of California, County of Orange, be removed therefrom to this Court.

Dated: September 6, 2013                    Respectfully Submitted,

                                            SCHLICHTER & SHONACK, LLP


                                            _____
                                            By: KURT A. SCHLICHTER
                                                STEVEN C. SHONACK
                                            Attorneys for Defendants CARMAX
                                            AUTO SUPERSTORES
                                            CALIFORNIA, LLC, SANTANDER
                                            CONSUMER USA INC., and
                                            SAFECO INSURANCE COMPANY
                                            OF AMERICA

**NOTICE OF REMOVAL OF ACTION PER 28 U.S.C. § 1441(b)**
**[DIVERSITY]**

# Exhibit A

ROSNER, BARRY & BABBITT, LLP
Hallen D. Rosner, SBN: 109740
Sharon E. Glassey, SBN: 226481
10085 Carroll Canyon Road, Suite 100
San Diego, CA 92131
TEL: (858) 348-1005
FAX: (858) 348-1150

Attorneys for Plaintiff

**ELECTRONICALLY FILED**
Superior Court of California,
County of Orange
**07/25/2013 at 09:00:54 AM**
Clerk of the Superior Court
By Eleanor Sutter,Deputy Clerk

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF ORANGE

CENTRAL JUSTICE CENTER

30-2013-00664679-CU-CO-CJC

| | |
|---|---|
| TRAVIS Z. GONZALES, an individual; | Case No. Judge James J. Di Cesare |
| Plaintiff, | COMPLAINT |
| v. | 1. VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT - EQUITABLE AND INJUNCTIVE RELIEF ONLY |
| CARMAX AUTO SUPERSTORES, LLC, a Virginia Corporation; SANTANDER USA CORPORATION, INC., an Illinois Corporation; SAFECO INSURANCE COMPANY OF AMERICA, a New Hampshire Corporation; and DOES 1 through 75, inclusive, | 2. VIOLATION OF THE SONG-BEVERLY CONSUMER WARRANTY ACT |
| | 3. FRAUD AND DECEIT |
| Defendants. | 4. VIOLATION OF BUSINESS & PROFESSIONS CODE §17200 |
| | 5. VIOLATION OF VEHICLE CODE §11711 |

## PARTIES AND VENUE

1.    Plaintiff is an individual who resided in the City of Orange, County of Orange, State of California at the time the contract that is the subject of this lawsuit was entered into.

///

1

COMPLAINT

2.     Defendant, CarMax Auto Superstores California, LLC, ("CarMax" or "the dealership") is or was a car dealership, registered to do business in the State of California, and doing business in the City of Costa Mesa, County of Orange.

3.     Defendant, Santander Consumers USA, Inc., ("Santander") is and was at all material times an Illinois Corporation, doing business through CarMax in the City of Costa Mesa, County of Orange, State of California. Santander, as the "Holder," accepted assignment of the California Retail Installment Contract ("RIC") for the purchase of the 2007 Infiniti, VIN: JNKBV61E27M727813, ("the vehicle") by Plaintiff. All claims and defenses that Plaintiff can maintain against the dealership can also be maintained against Santander.

4.     Defendant, Safeco Insurance Company of America ("Safeco"), is a New Hampshire Corporation, that issued the bond to CarMax under Vehicle Code §17110 (Bond #6564400, effective April 25, 2008) and is, therefore, liable for the acts of CarMax and Does 1 through 75 for the illegal conduct stated in this Complaint.

5.     Plaintiff does not know the true names and capacities, whether corporate, partnership, associate, individual or otherwise, of Defendants sued herein as Does 1 through 75, inclusive, and thus names them under the provisions of §474 of the California Code of Civil Procedure. Defendants Does 1 through 75, inclusive, are in some manner responsible for the acts, occurrences and transactions set forth herein, and are legally liable to Plaintiff and/or they are the alter-ego of the Defendants named herein. Plaintiff will set forth the true names and capacities of the fictitiously named Defendants together with appropriate charging allegations when ascertained.

6.     All acts of the dealership's employees as hereinafter alleged were authorized or ratified by the owner or managing agents of CarMax.

7.     Each Defendant, whether actually or fictitiously named herein, was the principal, agent (actual or ostensible), co-conspirator, or employee of each other Defendant and in acting as such principal or within the course and scope of such employment, agency, or conspiracy, took some part in the acts and omissions

1   hereinafter set forth by reason of which each Defendant is liable to Plaintiff for the
2   relief prayed for herein.

3       8.      Plaintiff signed a RIC for the purchase of the vehicle that is the subject of
4   this litigation. A true and correct copy of the RIC is attached hereto as Exhibit 1.

5       9.      The RIC for the vehicle includes the following language:

6               NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT
                CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES
7               WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER
                OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR
8               WITH THE PROCEEDS HEREOF, RECOVERY HEREUNDER BY
                THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE
9               DEBTOR HEREUNDER.

10      10.     This Notice makes Santander liable, contractually and under State law,
11  for all claims and defenses that could be raised against CarMax, with respect to the
12  purchase/sale of the vehicle. Santander is, therefore, liable for the acts of CarMax as
13  stated herein.

14      11.     The significance of the Holder Clause is that it completely eliminates the
15  protection traditionally afforded to a Holder in Due Course by subjecting a Holder to the
16  same claims and defenses which a Buyer can assert against a Seller or a Seller's
17  assignee.

18      12.     The inclusion of the Holder Clause in a RIC, such as the contract at issue
19  in this case, places Holder (Santander) on notice that, if it agrees to accept assignment
20  of that contract, it necessarily also agrees to waive the protections traditionally afforded
21  to a Holder in Due Course and to be subject to the same claims and defenses that the
22  Buyer could assert against the Seller or the Seller's assignee.

23      13.     As a result, when a Holder accepts assignment of a RIC bearing the Holder
24  Clause for the purchase and sale of a vehicle in California, it also implicitly agrees to
25  assume greater responsibility to the Buyer than statutorily required by the Automobile
26  Sales Finance Act. In essence, the Holder agrees to stand in the shoes of the Seller and
27  assumes the risk of Seller misconduct. Where, as here, a dealer/seller has violated
28  California law, the Holder, Santander, (having relinquished its statutory right to

1  limited enforcement of the contract by contractually assuming the status of the
2  dealership), cannot enforce the RIC against Plaintiff, regardless of the lack of
3  knowledge, and should Plaintiff elect to rescind the RIC, bears the dealership's
4  responsibility for refunding all monies paid by Plaintiff pursuant to the contract,
5  including monies paid directly to the dealership prior to the assignment.

6       14.    Santander is, therefore, liable for all of the dealership's misconduct as laid
7  forth below, with the right of rescission and damages, as established by the evidence.

8                        **SUMMARY OF ALLEGATIONS**

9       15.    Plaintiff was shopping for a certified pre-owned vehicle. Plaintiff went to
10 CarMax after hearing its radio advertisements and viewing its website, both of which
11 touted the benefits of purchasing a certified vehicle from CarMax based on its extensive
12 inspection/certification process.

13      16.    Plaintiff went to CarMax three of for times before deciding to purchase the
14 Infiniti.  He chose the Infiniti because he was told it was still under the original
15 manufacturer's warranty and CarMax's representatives representations about the 125-
16 point certification inspection performed on the vehicle. The salesman told Plaintiff he
17 could purchase a vehicle "with comfort" as CarMax doesn't sell "lemons."

18      17.    After careful consideration, and an extended purchase process, on August
19 24, 2012, Plaintiff purchased what he was told was a quality, inspected, vehicle that
20 was covered by the CarMax warranty, and the Infiniti warranty.

21      18.    In violation of California law, Plaintiff didn't receive the CarMax Certified
22 Quality Inspection ("CQI") checklist at any time.

23      19.    The law regulates the use of the word "Certified" when selling used
24 vehicles. A dealer cannot "advertise for sale or sell a used vehicle as 'certified' or use any
25 similar descriptive term" if the dealer does not comply with the requirements set forth
26 in Vehicle Code §11713.18. §11713.18(a)(6) states that it is a violation of California law
27 if "Prior to sale, the dealer fails to provide the buyer with a completed inspection report
28 indicating all the components inspected." Vehicle Code §11713.18(b) states that "A

1  violation of this section is actionable under the [Consumers Legal Remedies Act
2  ("CLRA"), Civil Code §1750 *et seq.*], [and] the [Unfair Competition Law ("UCL"), Bus.
3  and Prof. Code §17200 *et seq.*]. . ." (Veh. Code §11713.18(b).)

4      20.   CarMax makes extensive use of the term "certified" in its sales, promotions
5  and advertising. CarMax describes the vehicles it sells as "CarMax Quality Certified,"
6  and describes the inspection it performs on vehicles as a "Certified Quality Inspection,"
7  or "CQI."

8      21.   CarMax did not provide Plaintiff with a "completed inspection report
9  indicating all components inspected" prior to sale, during the sale, or after the sale.
10 This failure violated the CLRA in the following ways.

11     22.   First, CarMax violated the CLRA by labeling the vehicle "Certified"
12 without providing a completed inspection report prior to sale, or at any time thereafter.

13     23.   Second, CarMax called the vehicle "Certified" without providing a
14 completed inspection report prior to sale, or at any time thereafter. It is CarMax's
15 stated corporate policy to provide a generic list of components - a "Carmax Quality
16 Inspected ("CQI") Certificate" - that were purportedly inspected, without disclosing the
17 *results* of the inspection. A generic list is not a "completed inspection report."

18     24.   Third, CarMax actively suppressed and concealed the results of its vehicle
19 inspection, which it had a duty to disclose. It is CarMax's stated corporate policy that,
20 during CarMax's "CQI/VQI inspection, a "CQI/VQI Checklist" is filled out. This
21 checklist is the authentic record of the "Certification" inspection. But it it CarMax's
22 corporate policy to destroy the "CQI/VQI Checklist," in contravention of 13 C.C.R.
23 272.00, 13 C.C.R. 272.02 and CNCDA best practices.

24     25.   On information and belief, the CQI/VQI Checklist for Plaintiff's vehicle
25 was destroyed.

26     26.   Vehicle Code §11713.18 creates a duty to the dealership to disclose the
27 results of its vehicle inspection. (Vehicle Code § 11713.18(a)(6); *see* Vehicle Code
28 §11713.18(b).) But, CarMax disclosed nothing regarding its inspection. CarMax's active

1   suppression and concealment of the results of the vehicle inspection when it had a duty
2   to disclose such information constitutes a violation of the CLRA and Business &
3   Professions Code §17200.

4       27.    CarMax's Certified Quality Inspection Certificate does not memorialize
5   CarMax's CQI/VQI Checklist because the CQI Certificate is a generic form, and includes
6   mechanical systems that were impossible to check or certify because they do not exist
7   on Plaintiffs' vehicle (e.g. "Manual (starts w/ clutch in only)", "Clutch operation (manual
8   trans).

9       28.    Plaintiff was damaged by CarMax's conduct in the following ways. First,
10  Plaintiff was damaged because he received less than he paid for. Concerted marketing
11  of "Certified" pre-owned vehicles by auto manufacturers and dealers to consumers has
12  created an association of high quality.  Consequently, the "Certified" label itself has
13  intrinsic perceived value, apart from the qualities of the vehicle itself.  In other words,
14  simply calling a vehicle "Certified" increases its value and consumers are charged a
15  premium for allegedly certified vehicles.

16      29.    "Certified" pre-owned vehicles typically sell for between a few hundred and
17  a few thousand dollars more than a comparable, non-certified vehicle. Plaintiff paid for
18  a Certified 2007 Infiniti. What Plaintiff received was an uncertified 2007 Infiniti. Thus,
19  a component of Plaintiff's damages is the difference in value between a Certified 2007
20  Infiniti and an uncertified 2007 Infiniti.

21      30.    Plaintiff would have paid less and/or not purchased the vehicle if CarMax
22  had not represented that the vehicle was "Certified."

23      31.    Second, Plaintiff was damaged because he suffered opportunity costs due
24  to CarMax's misrepresentations. Plaintiff relied on CarMax's representations that the
25  vehicle was "Certified." Plaintiff suffered opportunity costs because CarMax's
26  misrepresentations diverted Plaintiff from finding an authentic "Certified" pre-owned
27  vehicle.

28  / / /

32. Finally, Plaintiff was damaged by CarMax's fraudulent concealment of the true condition of the Infiniti and its representations regarding the inspection of the vehicle.

33. CarMax's actions are sufficient to support punitive damages. CarMax markets its cars as certified to increase car sales, to increase the perceived value of it vehicles, and to make increased profits from consumers, including Plaintiff. CarMax's policies regarding the use of the term "Certified" are instituted at the highest corporate levels, with full knowledge that its use of the term violates California law and defrauds and cheats California consumers.

34. Since the Car Buyer's Bill of Rights was passed on or about June 1, 2006, CarMax has known that it is illegal to use the term "certified" or any similar descriptive term in its sales or advertising if, "Prior to sale, the dealership fails to provide the buyer with a completed inspection report indicating all the components inspected." CarMax opposed the passage of the Car Buyer's Bill of Rights (See letter on behalf of CarMax Re: Assembly Bill 68 attached hereto as Exhibit 2) and, once it was passed, decided to intentionally violate it.

35. With full knowledge of this law, CarMax's policies require each California CarMax dealership to violate the law in every sale, including the sale of the vehicle to Plaintiff.

36. CarMax's "Carmax Quality Inspected ("CQI") Certificate," which is purportedly provided in every sale, states, as to each car sale, "This is to certify that this vehicle has passed the rigorous CarMax Certified Quality Inspection." Despite CarMax's advertisements and representations regarding "CarMax Certified Quality" vehicles, CarMax does not enforce its own alleged "standards," and there is absent or deficient oversight and enforcement of the inspection and reconditioning process.

37. CarMax, to make more money, intentionally undermined protections granted consumers by California law. CarMax's intentional acts harm consumers and create profit for CarMax because consumers, including Plaintiff, are denied information,

1   and purchase vehicles that they would not otherwise purchase. Punitive damages are
2   proper to deter CarMax's acts deemed socially unacceptable and to discourage the
3   perpetuation of CarMax's objectionable corporate policies.

4       38.    Plaintiff purchased the vehicle in August 2012. Shortly after purchasing
5   the vehicle, Plaintiff returned to CarMax because the brake pads needed to be replaced
6   and with complaints of a clicking noise from the engine area and malfunctioning
7   windows.

8       39.    After the 30 day warranty CarMax express warranty period, but during
9   the Infiniti express warranty and CarMax implied warranty of merchantability, the
10  check engine light came on routinely, there were problems with the transmission, the
11  ticking noise persisted, and the warning lights on his dashboard would light up in
12  clusters.

13      40.    On January 2, 2013, Plaintiff took the vehicle to Infiniti of Tustin to have
14  the car inspected and diagnosed because he no longer trusted CarMax to properly
15  inspect, diagnose, or repair, his vehicle. Plaintiff complained that the car would jerk
16  when slowing down, the engine rattled when accelerating, and the instrument cluster
17  continues to illuminate. Plaintiff feels unsafe in the vehicle.

18      41.    Prior to buying the car, Plaintiff asked if his vehicle had been in an
19  accident, CarMax assured him it had not. However, an AutoCheck Vehicle History
20  Report states that the vehicle was in an accident in 2009.

21                          **FIRST CAUSE OF ACTION**

22      **Violation of the Consumers Legal Remedies Act, Civil Code §1750,
        *et seq.* - Equitable and Injunctive Relief, Only, as to all Defendants
23                  except Safeco Insurance Company of America**

24      42.    Plaintiff incorporates by reference each and every allegation set forth in
25  the preceding and following paragraphs of this Complaint.

26      43.    The subject vehicle constitutes "goods" bought for use primarily for
27  personal, family or household purposes pursuant to California Civil Code §1761(a).

28      44.    CarMax is a "person" pursuant to California Civil Code §1761(c).

45. Plaintiff is a "consumer" pursuant to California Civil Code §1761(d).

46. The advertisement and sale of the subject vehicle to Plaintiff are "transactions" pursuant to California Civil Code §1761(e).

47. Pursuant to the Consumers Legal Remedies Act ("CLRA"), the following unfair methods of competition and unfair or deceptive acts or practices are prohibited: (2) Misrepresenting the source, sponsorship, approval, or certification of goods or services; (3) Misrepresenting the affiliation, connection, or association with, or certification by, another; (5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have; (7) Representing that goods or services are of a particular standard, quality or grade, or that goods are a particular style or model, if they are of another; (9) Advertising goods or services with intent not to sell them as advertised; (14) Representing that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law; and (16) Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

48. Further, the California Legislature has recognized that a violation of Vehicle Code §11713.18 "is actionable under the [CLRA and] the [UCL]." (*See* Veh. Code §11718.13 (b).)

49. CarMax violated the CLRA by: (1) Misrepresenting that the vehicle had been subject to a thorough 125-point inspection; (2) Misrepresenting that the vehicle was "Certified," despite failing to provide a completed inspection report indicating all the components inspected prior to sale; (3) Failing to provide an inspection report for the vehicle at any time that complies with California law; (4) Failing to disclose the defective nature of the vehicle; (5) Calling the vehicle "Certified" when CarMax does not oversee, supervise and/or enforce any "certification" standards; (6) Using the terms "Certified," "Certify," and/or similar terms in the promotion, sales and advertising of the vehicle, despite failing to provide a completed inspection report indicating all the

1 components inspected prior to sale; (7) On information and belief, destroying the
2 CQI/VQI Checklist after the CQI/VQI inspection took place in violation of 13 C.C.R.
3 272.00 and 13 C.C.R. 272.02; (8) Violating Vehicle Code §11713.18; (9) Selling a vehicle
4 as "Certified" that would not pass a legitimate certification inspection; (10) Selling a
5 vehicle as "Certified" that is in need of substantial repair; (11) Actively concealing and
6 suppressing the results of the vehicle inspection when it has a duty to disclose those
7 results; and (12) Representing that the vehicle had not been in an accident, when it had.

8       50.     As detailed above, Plaintiff was damaged by CarMax's violations. Plaintiff
9 paid for a Certified 2007 Infiniti. Plaintiff received an uncertified 2007 Infiniti. Thus,
10 a component of Plaintiff's damages is the difference in value between a Certified 2007
11 Infiniti and an uncertified 2007 Infiniti.

12      51.     Plaintiff was also damaged because he suffered opportunity costs due to
13 CarMax's misrepresentations. Plaintiff relied upon CarMax's representations that the
14 vehicle was "Certified." Plaintiff suffered opportunity costs because CarMax's
15 misrepresentations diverted Plaintiff from finding an authentic "Certified" pre-owned
16 vehicle.

17      52.     Finally, Plaintiff was damaged by CarMax's fraudulent concealment of the
18 true condition of the vehicle. The vehicle has experienced many mechanical defects
19 since Plaintiff purchased it. CarMax fraudulently concealed the true condition of the
20 vehicle by concealing the results of its inspection. Plaintiff would have paid less and/or
21 not purchased the vehicle if CarMax had disclosed its true condition. Furthermore,
22 CarMax represented that the car had not been in an accident, when it had.

23      53.     Plaintiff, concurrent with the filing of this Complaint, mailed to
24 Defendants, via certified and regular mail, a copy of this lawsuit, which seeks equitable
25 and injunctive relief, only under the CLRA, and serves as notice to CarMax of its
26 violations of the CLRA. No monetary damages are sought under the CLRA at this time.
27 Only equitable and injunctive relief are sought at this time.

28      54.     The CLRA provides that a complaint for violations of that statutory act

1 may be amended without leave of court should the violations not be remedied within
2 thirty (30) days of notification. Plaintiff will amend this Complaint to add a claim for
3 damages under the CLRA for violations of California Civil Code §§1770(a)(2), (3), (5),
4 (7), (9), (14), and (16), should the violations complained of herein not be remedied within
5 the requisite time frame. In addition to actual, statutory, general, incidental, and
6 consequential damages, Plaintiff will seek punitive damages from CarMax for its
7 malicious, oppressive and fraudulent acts against Plaintiff. Plaintiff does not seek
8 damages of any kind under the CLRA at this time.

9      55.    Civil Code §1780(a)(2) of the CLRA provides that a consumer is entitled
10 to an injunction prohibiting acts or practices which violate the CLRA. Plaintiff seeks an
11 order enjoining CarMax from the acts, methods, and practices as set forth in Paragraph
12 49 of this Complaint.

13      56.    Pursuant to California Civil Code §1780(d), Plaintiff may also recover
14 attorney's fees and costs according to proof at time of trial.

15      57.    The RIC for the vehicle includes the following language:

16
17        NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT
CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES
WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER
18 OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR
WITH THE PROCEEDS HEREOF, RECOVERY HEREUNDER BY
19 THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE
DEBTOR HEREUNDER.
20      58.    This Notice makes Santander liable, contractually and under State law,
21 for all claims and defenses that could be raised against CarMax, with respect to the
22 purchase/sale of the vehicle. Santander is, therefore, liable for the acts of CarMax as
23 stated herein.

24                **SECOND CAUSE OF ACTION**

25     **Violation of the Song-Beverly Consumer Warranty Act, Civil Code §1790,
*et seq.* - as to all Defendants except Safeco Insurance Company of America**
26

27      59.    Plaintiff incorporates by reference each and every allegation set forth in
28 the preceding and following paragraphs of this Complaint.

11

60. Pursuant to the Song-Beverly Consumer Warranty Act (hereinafter "Song-Beverly") Civil Code §1790 *et seq.*, the vehicle constitutes "consumer goods" purchased primarily for family or household purposes and Plaintiff has used the vehicle primarily for those purposes.

61. Plaintiff is a "buyer" of consumer goods under Song-Beverly.

62. Defendant is a "seller" and "retailer" under Song-Beverly.

63. CarMax provided a 30 day/1,000 mile express and implied warranty on the vehicle.

64. The vehicle was delivered to Plaintiff with serious defects and nonconformities, including but not limited to a defective and malfunctioning engine, transmission, instrument panel, and accident damage.

65. The foregoing defects and nonconformities to warranty manifested themselves within the applicable implied and express warranty periods. The nonconformities substantially impair the use, value and/or safety of the vehicle and violate the implied warranty of merchantability.

66. In order to meet the implied warranty of merchantability consumer goods must meet each of the following criteria: (1) Pass without objection in the trade under the contract description; (2) Be fit for the ordinary purposes for which such goods are used; (3) Be adequately contained, packaged and labeled; and (4) Conform to the promises or affirmations of fact made on the container or label.

67. The implied warranty of merchantability has been breached, in that, among other matters: (1) Given the Certified designation, the vehicle would not pass without objection in the trade under the representations of the CarMax program because, among other things, the vehicle had substantial mechanical defects and accident damage; (2) The vehicle was not adequately labeled as it was not a properly certified vehicle; and (3) The vehicle did not conform to the promises and affirmations of CarMax's certified program.

/ / /

68.   Plaintiff is entitled to justifiably revoke acceptance of the vehicle under Song-Beverly.

69.   Plaintiff is entitled to and seeks damages and other legal and equitable relief, including, but not limited to, all incidental, consequential and general damages resulting from CarMax's failure to comply with its obligations under Song-Beverly.

70.   Plaintiff is entitled under Song-Beverly to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses, including attorneys' fees, reasonably incurred in connection with the commencement and prosecution of this action.

71.   The RIC for the vehicle includes the following language:

NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF, RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

72.   This Notice makes Santander liable, contractually and under State law, for all claims and defenses that could be raised against CarMax, with respect to the purchase/sale of the vehicle. Santander is, therefore, liable for the acts of CarMax as stated herein.

## THIRD CAUSE OF ACTION

### Fraud and Deceit - as to all Defendants except Safeco Insurance Company of America

73.   Plaintiff incorporates by reference each and every allegation set forth in the preceding and following paragraphs of this Complaint.

74.   CarMax fraudulently misrepresented that the vehicle was a "Certified" vehicle when it was not. CarMax also represented that the vehicle had not sustained accident damage when it had.

75.   CarMax describes its vehicles as "Certified." However, CarMax does not comply with California law regarding selling "Certified" vehicles.

13

COMPLAINT

76.    CarMax was aware that its advertisements and representations were false because it was CarMax's expressly stated corporate policy to fail to comply with the prerequisites, set forth in Vehicle Code §11713.18, for calling its vehicles "Certified."

77.    One of the substantial factors in Plaintiff's decision to visit, and purchase a vehicle from CarMax was the fact that CarMax certified its vehicles. Plaintiff also relied upon CarMax's representation that the vehicle had not sustained any accident damage.

78.    Plaintiff was harmed by CarMax's fraudulent misrepresentation because Plaintiff would have paid less and/or not purchased the vehicle if CarMax had not represented that the vehicle was "Certified" and free of accident damage.

79.    CarMax actively concealed and suppressed the results of its vehicle inspection. CarMax suppressed the results of its vehicle inspection by failing to provide a completed inspection report indicating all the components inspected prior to sale.

80.    The active concealment and suppression of the results of the inspection of the vehicle occurred on or about August 24, 2012, the date Plaintiff purchased the vehicle at CarMax's Costa Mesa location. (RIC attached hereto as Exhibit 1.)

81.    Plaintiff is informed and believes that CarMax actively concealed the results of its vehicle inspection by destroying the CQI/VQI Checklist after the CQI/VQI inspection took place. Plaintiff's belief is based on the fact that it is CarMax's stated corporate policy to destroy CQI/VQI Checklists and not provide them to consumers. Whether CarMax destroyed the CQI/VQI Checklist for Plaintiff's vehicle is peculiarly within the knowledge of CarMax. The date and place of CarMax's destruction of the CQI/VQI Checklist for Plaintiff's vehicle are also peculiarly within the knowledge of CarMax. Finally, the particular identities of the employees responsible for the destruction of the CQI/VQI Checklist are peculiarly within the knowledge of CarMax.

82.    CarMax had a duty to disclose the results of its vehicle inspection. A dealer cannot "advertise for sale or sell a used vehicle as 'certified' or use any similar descriptive term" if the dealer does not comply with the requirements set forth in

1 Vehicle Code §11713.18. §11713.18(a)(6) states that it is a violation if "Prior to sale, the
2 dealer fails to provide the buyer with a completed inspection report indicating all the
3 components inspected." Because CarMax called the vehicle "Certified," Vehicle Code
4 §11713.18(a)(6) directly imposed a duty to provide a completed inspection report
5 indicating all the components inspected prior to sale.

6     83.   CarMax intentionally concealed and suppressed the results of the vehicle
7 inspection because it is CarMax's express corporate policy to provide a generic list of
8 components - a "Carmax Quality Inspected ("CQI") Certificate" - that were purportedly
9 inspected, without disclosing the *results* of the inspection. The particular identities of
10 the employees, officers, or directors that are responsible for this policy are within the
11 superior knowledge of CarMax.

12     84.   CarMax instituted the policies above to intentionally undermine
13 protections granted to consumers by state law. CarMax actively opposed the passage
14 of the Car Buyer's Bill of Rights, which created the requirements of Vehicle Code
15 §11713.18(a)(6). (Exhibit 2, Letter Sent by CarMax Auto Superstores, Inc. to the Chair
16 of the Assembly Judiciary Committee on February 28, 2005.) When the Car Buyer's Bill
17 of Rights was passed on or about June 1, 2006, CarMax declined to change its practices
18 to conform to the new law. Therefore, CarMax knows that it is illegal to use the term
19 "certified" or any similar descriptive term in its sales or advertising if, "Prior to sale, the
20 dealership fails to provide the buyer with a completed inspection report indicating all
21 the components inspected," but intentionally instituted and continued corporate policies
22 that undermined protections granted to consumers by the Vehicle Code.

23     85.   Plaintiff was unaware of the results of the inspection of the vehicle. Had
24 Plaintiff been presented with the results of the inspection of the vehicle, Plaintiff would
25 not have purchased the vehicle, or would have purchased it for a lower price.

26     86.   Plaintiff was harmed as a result of CarMax's active concealment and
27 suppression of the results of the inspection of the vehicle because Plaintiff would not
28 have purchased the vehicle, or would have purchased it for a lower price.

87. Plaintiff is entitled to punitive damages pursuant to Civil Code §3294. CarMax, to make more money, intentionally undermined protections granted consumers by state law. CarMax's intentional acts harm consumers and create profit for CarMax because consumers, including Plaintiff, are denied information, and purchase vehicles that they would not otherwise purchase. Punitive damages are proper to deter CarMax's acts deemed socially unacceptable and to discourage the perpetuation of CarMax's objectionable corporate policies.

88. The RIC for the vehicle includes the following language:

NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF, RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

89. This Notice makes Santander liable, contractually and under State law, for all claims and defenses that could be raised against CarMax, with respect to the purchase/sale of the vehicle. Santander is, therefore, liable for the acts of CarMax as stated herein.

## FOURTH CAUSE OF ACTION

### Violation of Business & Professions Code §17200, *et seq.* - as to all Defendants except Safeco Insurance Company of America

90. Plaintiff incorporates by reference each and every allegation set forth in the preceding and following paragraphs of this Complaint.

91. CarMax committed acts of unfair competition, as defined by Business and Professions Code §17200, *et seq.* As set forth more fully above, CarMax has engaged in a course of conduct of systematically violating the consumer laws in this State prohibiting the commitment of deceptive practices, including the laws of fraud and deceit, and the various prohibitions contained in the California Code of Regulations, the California Vehicle Code, the Song-Beverly Consumer Warranty Act, and the Consumers Legal Remedies Act.

92.    CarMax has engaged in "unlawful" business acts and/or practices by: (1) Misrepresenting that the vehicle had been subject to a thorough 125-point inspection; (2) Misrepresenting that the vehicle was "Certified," despite failing to provide a completed inspection report indicating all the components inspected prior to sale; (3) Failing to provide an inspection report for the vehicle at any time that complies with California law; (4) Failing to disclose the defective nature of the vehicle; (5) Calling the vehicle "Certified" when CarMax does not oversee, supervise and/or enforce any "certification" standards; (6) Using the terms "Certified," "Certify," and/or similar terms in the promotion, sales and advertising of the vehicle, despite failing to provide a completed inspection report indicating all the components inspected prior to sale; (7) On information and belief, destroying the CQI/VQI Checklist after the CQI/VQI inspection took place in violation of 13 C.C.R. 272.00 and 13 C.C.R. 272.02; (8) Violating Vehicle Code §11713.18; (9) Selling a vehicle as "Certified" that would not pass a legitimate certification inspection; (10) Selling a vehicle as "Certified" that is in need of substantial repair; (11) Actively concealing and suppressing the results of the vehicle inspection when it has a duty to disclose those results; and (12) Representing that the vehicle had not been in an accident, when it had.

93.    The harm to Plaintiff outweighs the utility of CarMax's policies and practices particularly considering the available alternatives, and that CarMax's policies and practices are immoral, unscrupulous, unethical and against public policy. CarMax's policies and practices consequently constitute an "unfair" business act or practice within the meaning of Business and Professions Code §17200.

94.    CarMax's deceptive policies and practices as set forth above also are likely to and/or have deceived Plaintiff. Thus, CarMax has also engaged in "fraudulent" business practices.

95.    CarMax has engaged in, and continues to engage in, the same form of deceptive acts and practices.

/ / /

1     96.   CarMax's unlawful, unfair and fraudulent business practices present a

2 continuing threat to Plaintiff and others in that CarMax will continue utilizing similar

3 policies and practices.

4     97.   Business and Professions Code §17203 provides that Plaintiff is entitled

5 to an order enjoining CarMax from engaging in acts or practices that violate Business

6 and Professions Code §17200, as well as providing for equitable monetary relief so as

7 to preclude the retention of all ill-gotten monies by CarMax or so as to restore any

8 monies wrongfully obtained by CarMax to Plaintiff. Plaintiff has lost money and

9 suffered injury in fact as a result of CarMax's illegal conduct. Plaintiff seeks such

10 equitable monetary relief.

11     98.   The RIC for the vehicle includes the following language:

12 NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS
SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR
13 COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES
OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS
14 HEREOF, RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT
EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.
15

16     99.   This Notice makes Santander liable, contractually and under State law,

17 for all claims and defenses that could be raised against CarMax, with respect to the

18 purchase/sale of the vehicle. Santander is, therefore, liable for the acts of CarMax as

19 stated herein.

20 **FIFTH CAUSE OF ACTION**

21 **Violation of Vehicle Code §11711 – as to
Safeco Insurance Company of America, Only**
22

23     100.   Plaintiff incorporates by reference each and every allegation set forth in

24 the preceding and following paragraphs of this Complaint.

25     101.   As a condition of obtaining a license from the California DMV to sell

26 vehicles, CarMax was required by Vehicle Code §11710 to obtain, and did obtain, a

27 surety bond in the amount of $50,000 from Safeco.

28 / / /

1    102.   Safeco issued Bond #6564400, effective April 25, 2008, to CarMax, to
2  fulfill its obligations under Vehicle Code §11710. The bond issued to CarMax was in
3  effect on the date of the incidents alleged in this Complaint.

4    103.   Pursuant to Vehicle Code §11710(a), the bond was issued to CarMax and
5  made payable to "a purchaser" in the case of "fraud" by CarMax.

6    104.   Plaintiff is a purchaser within the meaning of Vehicle Code §11710(a).
7  Fraud, as that term is used in Vehicle Code §11710(a), is the same fraud as commonly
8  defined in the law, including fraud as defined in Civil Code §§1571, 1572, 1573 and
9  Vehicle Code §11710(a). *See Beverly Finance Co. v. American Casualty Co. of Reading*
10  (1969) 273 Cal.App.2d 259.

11    105.   As set forth herein, Defendant, CarMax, has committed fraud within the
12  meaning of Civil Code §§1571, 1572, 1573 and Vehicle Code §11710(a).

13    106.   Vehicle Code §11711(a) provides a consumer with a cause of action against
14  the bond if a dealership committed fraud. Plaintiff alleges that CarMax committed
15  fraud in the sale of the vehicle to him by: (1) Misrepresenting that the vehicle had been
16  subject to a thorough 125-point inspection; (2) Misrepresenting that the vehicle was
17  "Certified," despite failing to provide a completed inspection report indicating all the
18  components inspected prior to sale; (3) Failing to provide an inspection report for the
19  vehicle at any time that complies with California law; (4) Failing to disclose the
20  defective nature of the vehicle; (5) Calling the vehicle "Certified" when CarMax does not
21  oversee, supervise and/or enforce any "certification" standards; (6) Using the terms
22  "Certified," "Certify," and/or similar terms in the promotion, sales and advertising of the
23  vehicle, despite failing to provide a completed inspection report indicating all the
24  components inspected prior to sale; (7) On information and belief, destroying the
25  CQI/VQI Checklist after the CQI/VQI inspection took place in violation of 13 C.C.R.
26  272.00 and 13 C.C.R. 272.02; (8) Violating Vehicle Code §11713.18; (9) Selling a vehicle
27  as "Certified" that would not pass a legitimate certification inspection; (10) Selling a
28  vehicle as "Certified" that is in need of substantial repair; (11) Actively concealing and

1   suppressing the results of the vehicle inspection when it has a duty to disclose those
2   results; and (12) Representing that the vehicle had not been in an accident, when it had.

3       107.   Safeco is liable under the bond to CarMax, based on the fraud of CarMax,
4   in the amount of the purchase price of the vehicle, or such other sum as is established
5   at the time of trial, according to proof.

6       Accordingly, Plaintiff prays for judgment as follows and as permitted as to each
7   cause of action:

8       1.    For general damages according to proof at trial, excluding the Consumers
9           Legal Remedies Act at this time;

10      2.    For rescission of the purchase contract;

11      3.    For incidental and consequential damages according to proof at trial,
12          excluding the Consumers Legal Remedies Act at this time;

13      4.    For punitive damages based on the Fraud and Deceit cause of action, only,
14          at this time;

15      5.    No request for punitive damages is made as to Santander or Safeco;

16      6.    For the equitable and injunctive relief permitted under Civil Code §1780
17          and Business & Professions Code §17200;

18      7.    For pre-judgment interest at the legal rate;

19      8.    For reasonable attorney's fees and costs of suit as permitted by law
20          (including, but not limited to, Civil Code §§1780(d), 1794, Code of Civil
21          Procedure §1021.5, and the bond company claims);

22      9.    For such other and further relief as the Court deems just and proper under
23          the circumstances;

24      10.   No request for damages of any type are sought under the Consumers Legal
25          Remedies Act at this time; and,

26  /// 
27  /// 
28  ///

1       11.     Relief under Business & Professions Code §17200 as limited as provided

2             by law.

3

4  Dated: July 24, 2013                    ROSNER, BARRY & BABBITT, LLP

5

6                                  By: _____

7                                       Sharon E. Glassey
                                        Attorney for Plaintiff

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT

# EXHIBIT 1

INSURANCE AGENT OR BROKER.

TITLE HOLDER OF COLLATERAL: Santander Consumer

REGISTRANT: TRAVIS Z GONZALES

PHYSICAL DAMAGE DEDUCTIBLES: Comprehensive $ 500.00   Collision $ 500.00

INSURANCE COMPANY: AAA

POLICY NUMBER: G5406666

EFFECTIVE DATE: 10/21/2011   EXPIRATION DATE: N/A

AGENT NAME: AGENT   TELEPHONE NUMBER: (800) 672-9246

AGENT ADDRESS: N/A

You warrant and affirm that you have or will obtain the required insurance coverage as shown above and understand and agree that this is required by the Insurance Requirements section on the reverse side of this Contract.

**YOU AGREE THAT YOU VOLUNTARILY SELECTED THE ABOVE INSURANCE AGENT, BROKER OR COMPANY AND THAT SUCH CHOICE WAS NOT MADE A CONDITION PRECEDENT TO THE EXTENSION OF CREDIT UNDER THIS CONTRACT.**

BUYER
CO-BUYER
SELLER

UNLESS A CHARGE IS INCLUDED IN THIS AGREEMENT FOR PUBLIC LIABILITY OR PROPERTY DAMAGE INSURANCE, PAYMENT FOR SUCH COVERAGE IS NOT PROVIDED BY THIS AGREEMENT.

THE MINIMUM PUBLIC LIABILITY INSURANCE LIMITS PROVIDED IN LAW MUST BE MET BY EVERY PERSON WHO PURCHASES A VEHICLE. IF YOU ARE UNSURE WHETHER OR NOT YOUR CURRENT INSURANCE POLICY WILL COVER YOUR NEWLY ACQUIRED VEHICLE IN THE EVENT OF AN ACCIDENT, YOU SHOULD CONTACT YOUR INSURANCE AGENT.

WARNING:
YOUR PRESENT POLICY MAY NOT COVER COLLISION DAMAGE OR MAY NOT PROVIDE FOR FULL REPLACEMENT COSTS FOR THE VEHICLE BEING PURCHASED. IF YOU DO NOT HAVE FULL COVERAGE, SUPPLEMENTAL COVERAGE FOR COLLISION DAMAGE MAY BE AVAILABLE TO YOU THROUGH YOUR INSURANCE AGENT OR THROUGH THE SELLING DEALER. HOWEVER, UNLESS OTHERWISE SPECIFIED, THE COVERAGE YOU OBTAIN THROUGH THE DEALER PROTECTS ONLY THE DEALER, USUALLY UP TO THE AMOUNT OF THE UNPAID BALANCE REMAINING AFTER THE VEHICLE HAS BEEN REPOSSESSED AND SOLD.
FOR ADVICE ON FULL COVERAGE THAT WILL PROTECT YOU IN THE EVENT OF LOSS OR DAMAGE TO YOUR VEHICLE, YOU SHOULD CONTACT YOUR INSURANCE AGENT.
THE BUYER SHALL SIGN TO ACKNOWLEDGE THAT HE/SHE UNDERSTANDS THESE PUBLIC LIABILITY TERMS AND CONDITIONS.

X_____  X_____

If you have a complaint concerning this sale, you should try to resolve it with the Seller. Complaints concerning unfair or deceptive practices or methods by the Seller may be referred to the city attorney, the district attorney, or an investigator for the Department of Motor Vehicles, or any combination thereof.
After this contract is signed, the Seller may not change the financing or payment terms unless you agree in writing to the change. You do not have to agree to any change, and it is an unfair or deceptive practice for the Seller to make a unilateral change.

Buyer's Signature   Co-Buyer's Signature

**NOTICE TO BUYER:**
(1) Do not sign this agreement before you read it or if it contains any blank spaces to be filled in. (2) You are entitled to a completely filled-in copy of this agreement. (3) You can prepay the full amount due under this agreement at any time. (4) If you default in the performance of your obligations under this agreement, the vehicle may be repossessed and you may be subject to suit and liability for the unpaid indebtedness evidenced by this agreement.

YOU ACKNOWLEDGE RECEIPT OF A COMPLETELY FILLED-IN COPY OF THIS CONTRACT AND ANY OTHER DOCUMENTS THAT YOU SIGNED DURING CONTRACT NEGOTIATIONS AT THE TIME OF SIGNING.

Buyer _____  Date Aug 24, 2012
Seller CarMax Auto Superstores California, LLC
(Firm Name)

---

| D SUBTOTAL [A(14) + B(5) + C] | $ | |
|---|---|---|
| E DOWN PAYMENT | | |
| 1 "Trade-In" | | |
| a Value of "Trade-In" | $ | .00 |
| b Prior Credit or Lease Balance | $ | .00 |
| 2 Net Value of "Trade-In" (If 1(b) exceeds 1(a) a negative number will appear) | $ | (.00) |
| 3 Manufacturer's Rebate | $ | .00 |
| 4 Cash Down Payment | $ | 5,000.00 |
| 5 Other N/A | $ | .00 |
| 6 Total Down Payment (If the total down payment is a negative number, a zero will appear and the amount still owed will appear in A(11)) | $ | 5,000.00 |
| F AMOUNT FINANCED [D - E(6)] | $ | |

Seller may retain a portion of amount

**Seller Assisted Loan**
If the Seller assisted you in obtaining a loan to pay for part of the downpayment or purchase price of the vehicle, you will be obligated to repay the loan, and the installment payments under this Contract.

Amount of Loan $ N/A   Finance Charge $ N/A
Total $ N/A   repayable in N/A installments of
$ N/A   You may be required to pledge security for the loan

**Waiver of Confidentiality**
By signing below, you agree to waive your right, under California Vehicle Code §1808.21 to keep confidential your resident address as maintained in the records of the California Department of Motor Vehicles. This waiver will apply only to a financial institution licensed by the state or federal government to do business in California that acquires an interest in this Contract.

Buyer's Signature

**BROKER FEE DISCLOSURE**
If this Contract is for the sale of a new Vehicle, then this Contract:
☒ is not subject to an autobroker fee.
☐ is subject to a fee received by the following autobroker:

**THE PROVISIONS ON THE BACK ARE PART OF THIS CONTRACT**
Agreement to Arbitrate
By initialing below you represent that you have read and agree to the Arbitration Provisions on the back.

Buyer's Initials   Co-Buyer's Initials

**THERE IS NO COOLING OFF PERIOD UNLESS YOU OBTAIN A CONTRACT CANCELLATION OPTION**
California law does not provide for a "cooling-off" or other cancellation period for vehicle sales. Therefore, you cannot later cancel this contract simply because you change your mind, decide the vehicle costs too much, or wish you had acquired a different vehicle. After you sign below, you may only cancel this contract with the agreement of the seller or for legal cause, such as fraud.

However, California law does require a seller to offer a 2-day cancellation option on used vehicles with a purchase price of less than $40,000, subject to certain statutory conditions. This contract cancellation option requirement does not apply to the sale of a recreational vehicle, a motorcycle, or an off-highway motor vehicle subject to identification under California law. See the vehicle contract cancellation option agreement for details.

Co-Buyer _____  Date
By _____  Date

California Corporation

**ASSIGNMENT**
Seller hereby sells, assigns and transfers to _____ ("Assignee") this Contract, all Collateral and transfers to Assignee all rights, powers, and privileges herein given to Seller and all right, title, and interest of Seller in and to the property securing this Contract. If on the date of this assignment there is in effect a Dealer Agreement between Seller and Assignee pertaining to the sale of contracts to Assignee by Seller, the sale and assignment of this Contract to Assignee is made subject to all of the terms and conditions of that Dealer Agreement.

(Seller/Assignor) _____  Title _____  Date _____

6/12   www.carmax.com   FI-C0001

**Your Representations.** You promise that you have given true and correct information in your credit application. You understand that in entering this Contract we have relied on the representations you have made to us. Upon request, you agree to provide us with documents and other information necessary to verify any item contained in your credit application.

**Late Charge.** If you fail to pay any installment for more than 10 days after the date it is due, you will pay a late charge of 5% of the unpaid amount of the installment.

**NSF Fees.** If a check, draft, or order presented to us for payment is returned unpaid you will be charged the maximum NSF fee allowable under applicable law, not to exceed $15.

**Care, Use, and Location of the Vehicle.** You agree to pay us all you owe under this Contract even if the Vehicle is damaged, destroyed, or missing. You agree to keep the Vehicle in good condition and repair. If there is any loss or damage to the Vehicle, you will give us prompt written notice of the loss or damage. You agree not to use the Vehicle for hire or to sell, rent, lease, or transfer any interest in the Vehicle or this Contract. You agree that you will not permit the Vehicle to be used in any illegal manner or expose the Vehicle to misuse, seizure, confiscation, or involuntary transfer. The Vehicle will be kept at the address you provided to us in this Contract as shown on Page 1. You agree to notify us in writing of any change in your address or the location at which the Vehicle is regularly located. You are not allowed to remove the Vehicle from the United States. You may, however, take the Vehicle to Canada as long as it is for a period of 30 days or less.

**Insurance Requirements.** You agree to have physical damage insurance covering loss or damage to the Vehicle as long as amounts are owed under this Contract. The insurance must have comprehensive, collision, fire, and theft coverage in amounts acceptable to us and with the minimum available deductible. All required insurance must be with a properly licensed insurer reasonably acceptable to us and must name us as an additional insured and loss-payee. You agree to give us evidence of all required insurance promptly upon request. You agree that any insurance proceeds payable due to damage or loss of the Vehicle will be paid directly and solely to us. At our choice, we may use the insurance proceeds to repair the Vehicle or to pay amounts owed under this Contract. You agree that we may settle any insurance claim or sign any insurance checks on your behalf as necessary and if allowed by law.

**Failure to Maintain Insurance.** If you fail to maintain the required physical damage insurance, we may buy it for you. At our choice, the insurance we buy may only cover our interest in the Vehicle and be limited to what you owe under this Contract at the time. This means the insurance we obtain may not cover your interest in the Vehicle or any loss that you incur. We will charge you for any insurance we purchase. The insurance we buy may cost more than the insurance you could buy on your own. The charge for this insurance will be the amount advanced for it and a finance charge at the Annual Percentage Rate shown on Page 1 of this Contract or, if less, the highest rate allowed by law.

**Optional Service or GAP Contracts.** This Contract may contain charges for an optional service or GAP contract. If you are in default under this Contract or the vehicle is repossessed, you agree that Creditor, to the extent permitted by applicable law, may claim benefits under any optional contract or cancel it to obtain a refund for unearned charges. Any benefits and/or refunds received shall be applied toward your obligations under this Contract in accordance with applicable law. If you cancel an optional contract, you authorize Creditor to receive any refunds due you, which shall be applied by Creditor towards your obligations under this Contract in accordance with applicable law.

**Default and Required Repayment in Full.** You will be in default if you fail to make any payment required by this Contract. Your will also be in default if you break any other promise you have made in this Contract or if a bankruptcy or insolvency proceeding is initiated by you or against you. If you default we may require that you pay all you owe on this Contract at once subject to any right you may have to reinstate this Contract. All amounts owed following your default will continue to accrue finance charge or interest at the Annual Percentage Rate shown on Page 1 of this Contract or the highest rate allowed by law until paid in full.

**Other Remedies Upon Default.** Upon your default we may take (repossess) the Vehicle from you as long as we do so peacefully. All accessories, equipment or replacement parts will remain with the Vehicle following repossession.

**Getting the Vehicle and Property Back After Repossession.** If we repossess the Vehicle, you have the right to get it back until we sell it. This is your right to redeem. We will tell you what you need to do or how much you need to pay to redeem the Vehicle. If any personal property is in the Vehicle, we will store it for you at your expense. If you do not pick up your personal property, we will sell it if the law allows us to do so.

**Sale of the Repossessed Vehicle.** We will send you a written notice of sale before we sell the Vehicle. We will apply money from a sale to our expenses and then to amounts you owe under this Contract. Our expenses may include costs incurred by us in repossessing the Vehicle, holding and storing it, preparing it for sale, and selling it. If there is money left over, we will pay it to you unless we are required to pay it to someone else. If there is not enough money to pay all you owe, you will have to pay us the remaining balance.

**"Trade-in" and Down Payment.** You promise that you own and have valid title to any vehicle you sold to us as a "Trade-in." You represent that any "Trade-in" vehicle is free from any lien or security interest except as you have disclosed to us in writing. You promise that you have made the downpayment shown in the Itemization of Amount Financed on Page 1 of this Contract and that you have not borrowed it.

**Collection Costs.** Following any notice required by law, you agree to pay our reasonable attorney fees, plus court costs, if we refer this Contract for collection or enforcement to an attorney who is not our salaried employee.

**Title, Taxes, and Other Charges.** You agree to make sure that the title to the Vehicle shows our security interest. You also agree that we will be the only party with a security interest in the Vehicle and that our security interest will be the only security interest that appears on the title. You agree that you are, or will be, the registered owner of the Vehicle and that you will comply with all registration, licensing, tax, and title laws that apply to the Vehicle. You agree to pay when due all taxes, fees, repair bills, storage bills, fines, assessments, and other charges relating to the Vehicle. At our choice, we may pay any of these items to protect our interest in the Vehicle. If we do so and if allowed by law, you agree to repay us at our request.

**Delay in Enforcing Rights.** We will not lose any of our rights under this Contract if we delay or refrain from enforcing them. For example, we may extend the time for making some payments without extending others. Our acceptance of any late or partial payment does not excuse your late or partial payment or mean that you may continue to make late or partial payments.

**Applicable Law.** This Contract shall be governed by federal law and California law, except as otherwise provided in this Contract. If any provision is found to be ineffective under any applicable law or regulation, the remainder of this Contract shall not be affected and shall continue to be binding and effective.

**Application of Payments and Partial Prepayments.** We may apply each payment to earned and unpaid finance charge and to other amounts you owe under this Contract in any order we choose. If you make a partial prepayment you must still continue to make your regular monthly payments as scheduled in this Contract.

**Entire Agreement.** This Contract contains the entire agreement between you and us relating to this Contract. We may agree to extend or defer a payment and provide you written confirmation. Any other change to this Contract must be in a writing signed by us. No oral modifications to this Contract are binding.

**Communications.** You agree that we may monitor and record telephone calls regarding this Contract. You expressly consent that we may contact you (by calls, emails, text messages or other electronic messages) for any purpose related to this Contract by any means, including but not limited to the use of prerecorded/artificial voice messages or automatic telephone dialing devices. Your express consent applies to any email addresses or telephone numbers we obtain or you provide in any manner and at any time, including emails addresses or cellular telephone numbers for which you may incur voice, data or other charges.

---

The following notice applies only to purchases primarily for personal, family, or household purposes.

## NOTICE:

ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

---

The CarMax Warranty Brochure contains the details of the Limited Warranty.

LIMITATION OF WARRANTIES: CARMAX MAKES NO EXPRESS WARRANTIES UNLESS SEPARATELY SET FORTH IN WRITING. ANY AND ALL IMPLIED WARRANTIES APPLICABLE TO THE PRODUCTS SOLD HEREUNDER, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE, ARE LIMITED TO THE DURATION OF THE WRITTEN LIMITED WARRANTY GIVEN BY CARMAX, IF ANY.

To the extent allowed by applicable law, CarMax shall not be liable for any damages relating to loss of use of the products, loss of time, inconvenience or commercial loss, or any other incidental or consequential damages. Any and all warranties are extended only to the original purchaser.

SOME STATES DO NOT ALLOW LIMITATIONS ON HOW LONG AN IMPLIED WARRANTY LASTS OR EXCLUSION OR LIMITATIONS ON RELIEF SUCH AS INCIDENTAL OR CONSEQUENTIAL DAMAGES, SO THE ABOVE LIMITATION MAY NOT APPLY TO YOU. THIS WARRANTY GIVES YOU SPECIFIC LEGAL RIGHTS, AND YOU ALSO MAY HAVE OTHER RIGHTS WHICH VARY FROM STATE TO STATE.

"Trade-in" and Down Payment. You promise that you own and have valid title to any vehicle you sold to us as a "Trade-in." You represent that any "Trade-in" vehicle is free from any lien or security interest except as you have disclosed to us in writing. You promise that you have made the downpayment shown in the Itemization of Amount Financed on Page 1 of this Contract and that you have not borrowed it.

RELIEF SUCH AS INCIDENTAL OR CONSEQUENTIAL DAMAGES, SO THE ABOVE LIMITATION MAY NOT APPLY TO YOU. THIS WARRANTY GIVES YOU SPECIFIC LEGAL RIGHTS, AND YOU ALSO MAY HAVE OTHER RIGHTS WHICH VARY FROM STATE TO STATE.

VEHICLE RETURN POLICY. You may return the vehicle to CarMax for a refund and rescind this Contract within 5 calendar days if the condition of the vehicle does not change. This policy only applies to used vehicles.

## ARBITRATION PROVISION

This Arbitration Provision describes when and how a Claim (defined below) shall be arbitrated. Arbitration is a way of resolving disputes before one or more neutral persons, instead of having a trial in court before a judge and/or jury. By signing this Contract, you and we agree to be bound by the terms of this Arbitration Provision.

For purposes of this Arbitration Provision, references to "we", "us" and "our" mean the Seller, including its respective subsidiaries, affiliates, agents, employees and officers, or anyone to whom the Seller transfers its rights under the Contract.
IF YOU OR WE CHOOSE ARBITRATION, ARBITRATION SHALL BE MANDATORY, AND:

- ANY CLAIM WILL BE DECIDED BY ARBITRATION AND NOT IN COURT OR BY A JURY TRIAL.
- DISCOVERY AND RIGHTS TO APPEAL ARE LIMITED BY THE ARBITRATION RULES OF THE ARBITRATION ADMINISTRATOR.
- YOU GIVE UP YOUR RIGHT TO PARTICIPATE AS A REPRESENTATIVE OR MEMBER OF A CLASS IN A CLASS ACTION (CLASS ACTION WAIVER).
- OTHER RIGHTS THAT YOU OR WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.

a. What Claims are Covered. A "Claim" is any claim, dispute or controversy between you and us that in any way arises from or relates to this consumer credit sale, the purchase you are financing by way of this Contract, the Vehicle and related goods and services that are the subject of the purchase and this Contract, or the collection or servicing of this Contract, including but not limited to:

- Initial claims, counterclaims, cross-claims and third-party claims;
- Disputes based on contract, tort, consumer rights, fraud and other intentional torts (at law or in equity, including any claim for injunctive or declaratory relief);
- Disputes based on constitutional grounds or on laws, regulations, ordinances or similar provisions; and
- Disputes about the validity, enforceability, arbitrability or scope of this Arbitration Provision or this Contract, subject to paragraph (l) of this Arbitration Provision.

b. Commencing Arbitration. Either you or we may require any Claim to be arbitrated by first sending to the other party, by certified mail, a written notice of dispute ("Notice"). This Notice shall: (1) describe the nature and basis of the Claim and (2) set forth the specific relief sought. If we do not reach an agreement to resolve the Claim within 30 days after the Notice is received, you or we may commence an arbitration proceeding.

Arbitration of a Claim must comply with this Arbitration Provision and the applicable rules and procedures of the arbitration Administrator. Arbitration is not mandatory for an individual Claim that you or we may choose to bring in small claims court or the state's equivalent court, if any. If that Claim is transferred, removed or appealed to a different court, you or we then may choose arbitration.

c. Choosing the Administrator. If you initiate the arbitration proceeding, you may choose either of the following arbitration Administrators: (1) American Arbitration Association, 1633 Broadway, 10th Floor, New York, NY 10019, www.adr.org; (800) 778-7879 or (2) JAMS, 1920 Main Street, Suite 300, Irvine, CA 92614, www.jamsadr.com, (800) 352-5267. The Administrator you choose will have rules that apply to the proceeding. Important information regarding the arbitration process, and more complete information regarding arbitration procedures may be found at either Administrator's website. If the Administrator you choose is unable or unwilling or ceases to serve as the Administrator, you or we may choose the other Administrator. If both Administrators are unable or unwilling or cease to serve as the Administrator, you or we may choose another Administrator, subject to the other's approval. In all cases, any arbitrator must be a lawyer or a retired judge with at least 10 years of legal experience. If we initiate the arbitration proceeding, we will give you 20 days to choose the Administrator. If you do not choose the Administrator within that time, we will choose one for you. No matter which Administrator is chosen, you shall have the right to be represented by an attorney of your own choosing, subject to any limitations in the Administrator's rules.

d. Choosing the Location. Any arbitration hearing that you attend must take place at a location reasonably convenient to your residence.

e. Paying for Arbitration. Each Administrator charges fees to administer an arbitration proceeding. This may include fees not charged by a court. When you choose an Administrator, you should carefully review the fees charged by the Administrator. The party that initiates the arbitration shall pay the initial filing fee, and fees and costs thereafter shall be paid in accordance with the rules and procedures of the Administrator. Each party must pay the expense of that party's attorneys, experts, and witnesses, regardless of which party prevails in the arbitration, unless applicable law or the Administrator's rules, procedures or standards provide otherwise.

f. Class Action Waiver. You give up your right to participate in a class action. This means that you may not be a representative or member of any class of claimants or act as a private attorney general in court or in arbitration with respect to any Claim. Further, unless both you and we agree otherwise, the arbitrator may not consolidate more than one person's Claim or Claims. Notwithstanding any other part of this Arbitration Provision, the validity and effect of the Class Action Waiver must be determined only by a court and not by an arbitrator. If a court limits or voids the Class Action Waiver, then this entire Arbitration Provision (except for this paragraph) will be null and void.

g. Right to Discovery. The parties shall have the right to discovery of non-privileged information and documents relevant to the Claim, subject to the rules and procedures of the Administrator.

h. Arbitration Result and Right of Appeal. Judgment upon the award given by the arbitrator may be entered in any court having jurisdiction. In response to a timely request from either party, the arbitrator must provide a brief written explanation of the basis for any award. The arbitrator's decision is final and binding, except for any right of appeal provided by the Federal Arbitration Act. Any party can appeal the award to a three-arbitrator panel administered by the Administrator, which must reconsider any aspect of the initial award requested by the appealing party. Reference in this Arbitration Provision to the "arbitrator" means the panel of arbitrators if an appeal of the arbitrator's decision has been taken. Subject to applicable law, costs of such an appeal will be borne by the appealing party, regardless of the outcome of the appeal, unless applicable law or the Administrator's rules provide otherwise. However, we will consider any good faith, reasonable request for us to pay all or any part of those fees if you are the appealing party.

i. Governing Law. This Arbitration Provision is governed by the Federal Arbitration Act and not by any state arbitration law. The arbitrator must apply applicable statutes of limitations and claims of privilege recognized at law, and applicable substantive law consistent with the Federal Arbitration Act. The arbitrator is authorized to award all individual remedies permitted by the substantive law that would apply if the action were pending in court.

j. Rules of Interpretation. This Arbitration Provision survives the repayment of all amounts owed to us, the transfer of the Contract, and any bankruptcy by you, to the extent not inconsistent with applicable bankruptcy law. Except as provided in paragraph (f), if any part of this Arbitration Provision is determined to be invalid or unenforceable, the Arbitration Provision and the Contract will remain enforceable. In the event of a conflict or inconsistency between this Arbitration Provision and the applicable arbitration rules or the other provisions of this Contract or any other contract between you and us, this Arbitration Provision will govern.

The following Buyers Guide notice applies in the case of a used motor vehicle purchase and is required by federal regulation:
THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE. SPANISH TRANSLATION: GUÍA PARA COMPRADORES DE VEHÍCULOS USADOS. LA INFORMACIÓN QUE VE EN EL FORMULARIO DE LA VENTANILLA PARA ESTE VEHÍCULO FORMA PARTE DEL PRESENTE CONTRATO. LA INFORMACIÓN DEL FORMULARIO DE LA VENTANILLA DEJA SIN EFECTO TODA DISPOSICIÓN EN CONTRARIO CONTENIDA EN EL CONTRATO DE VENTA.

# EXHIBIT 2

MAR 2 2005

### KAHN, SOARES & CONWAY, LLP
ATTORNEYS AT LAW

1415 L STREET, SUITE 400
SACRAMENTO, CALIFORNIA 95814-3910
TELEPHONE (916) 448-3826
FACSIMILE (916) 448-3850
E-Mail: law@kscsacramento.com
www.kaclawyers.com

OTHER OFFICES &
AFFILIATED OFFICES:

HANFORD, CALIFORNIA
FRESNO, CALIFORNIA
OAKDALE, CALIFORNIA
WASHINGTON, D C

AMY L. BROWN
GOVERNMENTAL ADVOCATE
E-Mail: abrown@kscsacramento.com

February 28, 2005

The Honorable Dave Jones
Chair, Assembly Judiciary Committee
State Capitol
Sacramento, CA 95814

RE:     AB 68 (Montanez) – Opposed

Dear Assembly Member Jones:

On behalf of my client, CarMax Auto Superstores, Inc. (CarMax), I write to express our opposition to AB 68 (Montanez). CarMax is the nation's leading specialty retailer of used cars operating 58 stores in 27 markets, including four stores in California, with two set to open next month.

CarMax supports the intent of this legislation. In fact, the CarMax business model is built on the premise of full disclosure to the consumer. Unfortunately, rather than solving the perceived inequities borne by car buyers in California, AB 68 as currently written, would force CarMax to consider discontinuing its business operations in California.

CarMax has three concerns with the bill. First, AB 68 contains certification language that is unworkable in numerous ways. The bill prohibits the sale of a "certified" used car unless, "the vehicle has not sustained damage that substantially impairs its use or safety to the buyer." The ambiguity of the language prevents dealers and customers from objectively understanding what it means to be in compliance with this clause. No dealer, including CarMax, can meet this subjective standard without potentially spending years in court seeking a judicial interpretation after consumer claims have been filed. To avoid this expense and uncertainty, dealers would be forced to sell used cars 'As is' thereby eliminating quality certification programs. Selling quality certified reconditioned automobiles is the core of CarMax' business and it is not possible for CarMax to convert to an "As Is" business model without doing substantial damage to its consumer reputation.

CarMax is also concerned with the strict liability created for odometer rollbacks. Regardless of a dealer's due diligence in researching the history of a car, there are times

(800) 865-1311   LEGISLATIVE INTENT SERVICE

AP - 62

The Honorable Dave Jones
Chair, Assembly Judiciary Committee
February 28, 2005
Page 2

when an odometer rollback cannot be determined  Carfax and Autocheck are the two main sources used by dealers, including CarMax, to determine a vehicle's true mileage. If the data contained in these databases is incorrect, CarMax will not know that an odometer has been rolled back. CarMax understands that a consumer does not wish to purchase a vehicle with inaccurate mileage. To protect the consumer in such and event, CarMax offers the consumer the option of returning the vehicle for a refund of the full purchase price or, if the consumer wishes to keep the vehicle, CarMax offers the consumer a cash credit based upon the difference between the true and represented mileage. The language in AB 68 subjects CarMax and other well-intentioned dealers to civil and criminal liability for a mistake for which they had no actual or constructive knowledge.  As an alternative to this certification provision of the bill, CarMax has provided language to the author that would provide for full disclosure to the buyer regarding the certification program offered by the seller.

Our second concern is the three-day cooling off language. Simply stated, this is a market issue.  CarMax offers a five-day cooling off period  Other dealers offer three days. Some offer none.  The marketplace already offers a consumer the option to return a vehicle to dealers such as CarMax; there is no need for the Legislature to mandate a cooling off period.

Finally, CarMax does not support a financing cap of 2.5% on third party lender fees. Nor does CarMax support disclosing the consumer's credit score at the point of sale. CarMax does not engage in marking-up the finance rate offered to the consumer to receive a yield spread premium.  CarMax consumers are offered the buy-rate offered by the third party lenders which is disclosed to the consumer at the point of sale. CarMax does not add any additional interest to the lender's buy rate. The consumer pays only the actual loan rate of the lender selected by the consumer. CarMax does sell the conditional sales contract to the finance company selected by the buyer for a flat fee. This is a payment made by the lender to CarMax which is deducted from the lender's profit and is not paid for by the consumer.  This payment represents a commercial transaction between two businesses and does not result in an increased loan rate for the consumer  If the consumer obtains his or her own financing, then CarMax receives no payment at all. The consumer always has the right to shop for the best financing terms and does not have to accept any of the quoted rates of the major banks that are connected online with CarMax.  Capping the amount that a third party lender pays to the dealer, in the absence of any dealer mark-up to the consumer's loan, is merely a legislative decision to increase the lender's profit at the expense of the dealer.  This does not act in any manner to enhance protection of the consumer.

Furthermore, furnishing the consumer's credit score does nothing to educate the consumer at the point of sale. CarMax supports full disclosure of the rate offered by the finance company and the additional percentage points tacked on by the dealer.  This would show the consumer the true cost of the financing and allow the consumer to make an informed purchase decision  Only when the buyer has access to this information can

LEGISLATIVE INTENT SERVICE    (800) 666-1917

AP - 63

The Honorable Dave Jones
Chair, Assembly Judiciary Committee
February 28, 2005
Page 3

he or she protect themselves from unscrupulous dealers. Credit scores come from three main credit rating agencies and are used by lenders to calculate creditworthiness using the lender's own financing decision algorithms. A simple credit score, without any knowledge of the lender's algorithms, or without knowledge of which rating agency issued the score would be meaningless to the consumer. Showing the consumer the actual financing rates (lender's and dealers mark-up, if any), along with the term of the loan, monthly payment, and total amount financed over the life of the loan give the consumer a very clear picture of the cost of the loan. CarMax supports the disclosure of this information. CarMax does not see the need or efficacy of disclosing the credit score at the point of sale. The language in AB 68 does little to protect consumers from discriminatory dealer financing mark-ups. Full disclosure of the markup, without arbitrarily capping the amount that could be charged by the dealer, would protect the consumer from making an uninformed decision without unreasonably interfering in the free marketplace.

We look forward to working with Assembly Member Montanez to address these issues in the hope of finding a mutually agreeable bill. If you have any questions about our concerns, please do not hesitate to contact me.

Respectfully,

KAHN, SOARES & CONWAY, LLP

Amy Brown

cc:    Members, Assembly Judiciary Committee
       The Honorable Cindy Montanez
       Mr. Richard Costigan, Office of Governor Arnold Schwarzenegger
       Mr. Stuart Heaton, CarMax Auto Superstores, Inc.



# Exhibit B

AMENDED

**SUMMONS**

*(CITACION JUDICIAL)*

SUM-100

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

CarMax Auto Superstores, LLC, a Virginia Limited Liability Company; Santander Consumer
USA, Inc., an Illinois Corporation; Safeco Insurance Company of America, a New Hampshire
Corporation; and DOES 1 through 75, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

Travis Z. Gonzales, an individual

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

**ELECTRONICALLY FILED**
Superior Court of California,
County of Orange

**08/01/2013** at 08:25:00 AM

Clerk of the Superior Court
By Sarah Loose, Deputy Clerk

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>Orange County Superior Court<br>700 Civic Center Drive West<br>Santa Ana, CA 92702-1994 | CASE NUMBER:<br>*(Número del Caso):*<br>30-2013-00664579-CU-CO-CJC<br><br>Judge James J. Di Cesare |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Hallen D. Rosner, SBN 109740 / Sharon E. Glassey, SBN 226481          (858) 348-1005
Rosner, Barry & Babbitt, LLP
10085 Carroll Canyon Road, Ste 100, San Diego, CA 92131          ALAN CARLSON, Clerk of the Court

DATE:
*(Fecha)* 08/01/2013          Clerk, by          , Deputy
          *(Secretario)*          *Alwse*          *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*          Sarah Loose

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☑ on behalf of *(specify):*   Carmax Auto Superstores, LLC, a Virginia Limited
           Liability Company

   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)          ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)          ☐ CCP 416.90 (authorized person)
          ☑ other *(specify):* Limited Liability Company
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465<br>www.courtinfo.ca.gov<br>American LegalNet, Inc.<br>www.FormsWorkflow.com

**ELECTRONICALLY FILED**
Superior Court of California,
County of Orange

**08/01/2013 at 08:26:00 AM**

Clerk of the Superior Court
By Sarah Loose,Deputy Clerk

1 | ROSNER, BARRY & BABBITT, LLP
Hallen D. Rosner, SBN: 109740
2 | Sharon E. Glassey, SBN: 226481
10085 Carroll Canyon Road, Suite 100
3 | San Diego, CA 92131
TEL: (858) 348-1005
4 | FAX: (858) 348-1150

5 | Attorneys for Plaintiff

6

7

8 | IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9 | IN AND FOR THE COUNTY OF ORANGE

10 | CENTRAL JUSTICE CENTER

11

12 | TRAVIS Z. GONZALES, an individual,

Case No. 30-2013-00664579-CU-CO-CJC

13 | Plaintiff,

AMENDED COMPLAINT

14 | v.

1. VIOLATION OF THE
CONSUMERS LEGAL REMEDIES
15 | ACT - EQUITABLE AND
INJUNCTIVE RELIEF ONLY

16 | CARMAX AUTO SUPERSTORES, LLC,
a Virginia Limited Liability Company;
17 | SANTANDER CONSUMER USA, INC.,
an Illinois Corporation;
18 | SAFECO INSURANCE COMPANY OF
AMERICA, a New Hampshire
19 | Corporation; and DOES 1 through 75,
inclusive,

2. VIOLATION OF THE SONG-
BEVERLY CONSUMER
WARRANTY ACT

3. FRAUD AND DECEIT

20 | Defendants.

4. VIOLATION OF BUSINESS &
PROFESSIONS CODE §17200

21

5. VIOLATION OF VEHICLE CODE
§11711

22

23 | Judge: Hon. James Di Cesare
Dept: C18
Case Filed: July 25, 2013

24

25

26

27

28

1

AMENDED COMPLAINT

## PARTIES AND VENUE

1. Plaintiff is an individual who resided in the City of Orange, County of Orange, State of California at the time the [illegible] is the subject of this lawsuit was entered into.

2. Defendant, CarMax Auto Superstores California, ("CarMax" or "the dealership") is [illegible] a car dealership, registered to do business in the State of California, and doing business in the City of Costa Mesa, County of Orange.

3. Defendant, Santander Consumer USA, Inc., ("Santander") is and was at all material times an Illinois Corporation, doing business through CarMax in the City of Costa Mesa, County of Orange, State of California. Santander, as the "Holder," accepted assignment of the California Retail Installment Contract ("RIC") for the purchase of the 2007 Infiniti, VIN: JNKBV61E27M727813, ("the vehicle") by Plaintiff. All claims and defenses that Plaintiff can maintain against the dealership can also be maintained against Santander.

4. Defendant, Safeco Insurance Company of America ("Safeco"), is a New Hampshire Corporation, that issued the bond to CarMax under Vehicle Code §17110 (Bond #6564400, effective April 25, 2008) and is, therefore, liable for the acts of CarMax and Does 1 through 75 for the illegal conduct stated in this Complaint.

5. Plaintiff does not know the true names and capacities, whether corporate, partnership, associate, individual or otherwise, of Defendants sued herein as Does 1 through 75, inclusive, and thus names them under the provisions of §474 of the California Code of Civil Procedure. Defendants Does 1 through 75, inclusive, are in some manner responsible for the acts, occurrences and transactions set forth herein, and are legally liable to Plaintiff and/or they are the alter-ego of the Defendants named herein. Plaintiff will set forth the true names and capacities of the fictitiously named Defendants together with appropriate charging allegations when ascertained.

6. All acts of the dealership's employees as hereinafter alleged were authorized or ratified by the owner or managing agents of CarMax.

AMENDED COMPLAINT

1    7.    Each Defendant, whether actually or fictitiously named herein, was the
2 principal, agent (actual or ostensible), co-conspirator, or employee of each other
3 Defendant and in acting as such principal or within the course and scope of such
4 employment, agency, or conspiracy, took some part in the acts and omissions
5 hereinafter set forth by reason of which each Defendant is liable to Plaintiff for the
6 relief prayed for herein.

7    8.    Plaintiff signed a RIC for the purchase of the vehicle that is the subject of
8 this litigation. A true and correct copy of the RIC is attached hereto as Exhibit 1.

9    9.    The RIC for the vehicle includes the following language:

10            NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT
              CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES
11            WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER
              OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR
12            WITH THE PROCEEDS HEREOF, RECOVERY HEREUNDER BY
              THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE
13            DEBTOR HEREUNDER.

14    10.    This Notice makes Santander liable, contractually and under State law,
15 for all claims and defenses that could be raised against CarMax, with respect to the
16 purchase/sale of the vehicle. Santander is, therefore, liable for the acts of CarMax as
17 stated herein.

18    11.    The significance of the Holder Clause is that it completely eliminates the
19 protection traditionally afforded to a Holder in Due Course by subjecting a Holder to the
20 same claims and defenses which a Buyer can assert against a Seller or a Seller's
21 assignee.

22    12.    The inclusion of the Holder Clause in a RIC, such as the contract at issue
23 in this case, places Holder (Santander) on notice that, if it agrees to accept assignment
24 of that contract, it necessarily also agrees to waive the protections traditionally afforded
25 to a Holder in Due Course and to be subject to the same claims and defenses that the
26 Buyer could assert against the Seller or the Seller's assignee.

27    13.    As a result, when a Holder accepts assignment of a RIC bearing the Holder
28 Clause for the purchase and sale of a vehicle in California, it also implicitly agrees to

1  assume greater responsibility to the Buyer than statutorily required by the Automobile
2  Sales Finance Act. In essence, the Holder agrees to stand in the shoes of the Seller and
3  assumes the risk of Seller misconduct. Where, as here, a dealer/seller has violated
4  California law, the Holder, Santander, (having relinquished its statutory right to
5  limited enforcement of the contract by contractually assuming the status of the
6  dealership), cannot enforce the RIC against Plaintiff, regardless of the lack of
7  knowledge, and should Plaintiff elect to rescind the RIC, bears the dealership's
8  responsibility for refunding all monies paid by Plaintiff pursuant to the contract,
9  including monies paid directly to the dealership prior to the assignment.

10      14.    Santander is, therefore, liable for all of the dealership's misconduct as laid
11  forth below, with the right of rescission and damages, as established by the evidence.

12                          **SUMMARY OF ALLEGATIONS**

13      15.    Plaintiff was shopping for a certified pre-owned vehicle. Plaintiff went to
14  CarMax after hearing its radio advertisements and viewing its website, both of which
15  touted the benefits of purchasing a certified vehicle from CarMax based on its extensive
16  inspection/certification process.

17      16.    Plaintiff went to CarMax three of for times before deciding to purchase the
18  Infiniti.  He chose the Infiniti because he was told it was still under the original
19  manufacturer's warranty and CarMax's representatives representations about the 125-
20  point certification inspection performed on the vehicle. The salesman told Plaintiff he
21  could purchase a vehicle "with comfort" as CarMax doesn't sell "lemons."

22      17.    After careful consideration, and an extended purchase process, on August
23  24, 2012, Plaintiff purchased what he was told was a quality, inspected, vehicle that
24  was covered by the CarMax warranty, and the Infiniti warranty.

25      18.    In violation of California law, Plaintiff didn't receive the CarMax Certified
26  Quality Inspection ("CQI") checklist at any time.

27      19.    The law regulates the use of the word "Certified" when selling used
28  vehicles. A dealer cannot "advertise for sale or sell a used vehicle as 'certified' or use any

1 similar descriptive term" if the dealer does not comply with the requirements set forth
2 in Vehicle Code §11713.18. §11713.18(a)(6) states that it is a violation of California law
3 if "Prior to sale, the dealer fails to provide the buyer with a completed inspection report
4 indicating all the components inspected." Vehicle Code §11713.18(b) states that "A
5 violation of this section is actionable under the [Consumers Legal Remedies Act
6 ("CLRA"), Civil Code §1750 *et seq*.], [and] the [Unfair Competition Law ("UCL"), Bus.
7 and Prof. Code §17200 *et seq*.]. . ." (Veh. Code §11713.18(b).)

8     20.    CarMax makes extensive use of the term "certified" in its sales, promotions
9 and advertising. CarMax describes the vehicles it sells as "CarMax Quality Certified,"
10 and describes the inspection it performs on vehicles as a "Certified Quality Inspection,"
11 or "CQI."

12     21.    CarMax did not provide Plaintiff with a "completed inspection report
13 indicating all components inspected" prior to sale, during the sale, or after the sale.
14 This failure violated the CLRA in the following ways.

15     22.    First, CarMax violated the CLRA by labeling the vehicle "Certified"
16 without providing a completed inspection report <u>prior to sale</u>, or at any time thereafter.

17     23.    Second, CarMax called the vehicle "Certified" without providing <u>a</u>
18 <u>completed inspection report</u> prior to sale, or at any time thereafter. It is CarMax's
19 stated corporate policy to provide a generic list of components - a "Carmax Quality
20 Inspected ("CQI") Certificate" - that were purportedly inspected, without disclosing the
21 *results* of the inspection. A generic list is not a "completed inspection report."

22     24.    Third, CarMax actively suppressed and concealed the results of its vehicle
23 inspection, which it had a duty to disclose. It is CarMax's stated corporate policy that,
24 during CarMax's "CQI/VQI inspection, a "CQI/VQI Checklist" is filled out. This
25 checklist is the authentic record of the "Certification" inspection. But it it CarMax's
26 corporate policy to destroy the "CQI/VQI Checklist," in contravention of 13 C.C.R.
27 272.00, 13 C.C.R. 272.02 and CNCDA best practices.

28 / / /

25.    On information and belief, the CQI/VQI Checklist for Plaintiff's vehicle was destroyed.

26.    Vehicle Code §11713.18 creates a duty to the dealership to disclose the results of its vehicle inspection. (Vehicle Code § 11713.18(a)(6); *see* Vehicle Code §11713.18(b).) But, CarMax disclosed nothing regarding its inspection. CarMax's active suppression and concealment of the results of the vehicle inspection when it had a duty to disclose such information constitutes a violation of the CLRA and Business & Professions Code §17200.

27.    CarMax's Certified Quality Inspection Certificate does not memorialize CarMax's CQI/VQI Checklist because the CQI Certificate is a generic form, and includes mechanical systems that were impossible to check or certify because they do not exist on Plaintiffs' vehicle (*e.g.* "Manual (starts w/ clutch in only)", "Clutch operation (manual trans).

28.    Plaintiff was damaged by CarMax's conduct in the following ways. First, Plaintiff was damaged because he received less than he paid for. Concerted marketing of "Certified" pre-owned vehicles by auto manufacturers and dealers to consumers has created an association of high quality. Consequently, the "Certified" label itself has intrinsic perceived value, apart from the qualities of the vehicle itself. In other words, simply calling a vehicle "Certified" increases its value and consumers are charged a premium for allegedly certified vehicles.

29.    "Certified" pre-owned vehicles typically sell for between a few hundred and a few thousand dollars more than a comparable, non-certified vehicle. Plaintiff paid for a Certified 2007 Infiniti. What Plaintiff received was an uncertified 2007 Infiniti. Thus, a component of Plaintiff's damages is the difference in value between a Certified 2007 Infiniti and an uncertified 2007 Infiniti.

30.    Plaintiff would have paid less and/or not purchased the vehicle if CarMax had not represented that the vehicle was "Certified."

/ / /

6

AMENDED COMPLAINT

31.     Second, Plaintiff was damaged because he suffered opportunity costs due to CarMax's misrepresentations. Plaintiff relied on CarMax's representations that the vehicle was "Certified." Plaintiff suffered opportunity costs because CarMax's misrepresentations diverted Plaintiff from finding an authentic "Certified" pre-owned vehicle.

32.     Finally, Plaintiff was damaged by CarMax's fraudulent concealment of the true condition of the Infiniti and its representations regarding the inspection of the vehicle.

33.     CarMax's actions are sufficient to support punitive damages. CarMax markets its cars as certified to increase car sales, to increase the perceived value of it vehicles, and to make increased profits from consumers, including Plaintiff. CarMax's policies regarding the use of the term "Certified" are instituted at the highest corporate levels, with full knowledge that its use of the term violates California law and defrauds and cheats California consumers.

34.     Since the Car Buyer's Bill of Rights was passed on or about June 1, 2006, CarMax has known that it is illegal to use the term "certified" or any similar descriptive term in its sales or advertising if, "Prior to sale, the dealership fails to provide the buyer with a completed inspection report indicating all the components inspected." CarMax opposed the passage of the Car Buyer's Bill of Rights (See letter on behalf of CarMax Re: Assembly Bill 68 attached hereto as Exhibit 2) and, once it was passed, decided to intentionally violate it.

35.     With full knowledge of this law, CarMax's policies require each California CarMax dealership to violate the law in every sale, including the sale of the vehicle to Plaintiff.

36.     CarMax's "Carmax Quality Inspected ("CQI") Certificate," which is purportedly provided in every sale, states, as to each car sale, "This is to certify that this vehicle has passed the rigorous CarMax Certified Quality Inspection." Despite CarMax's advertisements and representations regarding "CarMax Certified Quality"

1 vehicles, CarMax does not enforce its own alleged "standards," and there is absent or
2 deficient oversight and enforcement of the inspection and reconditioning process.

3    37.    CarMax, to make more money, intentionally undermined protections
4 granted consumers by California law. CarMax's intentional acts harm consumers and
5 create profit for CarMax because consumers, including Plaintiff, are denied information,
6 and purchase vehicles that they would not otherwise purchase. Punitive damages are
7 proper to deter CarMax's acts deemed socially unacceptable and to discourage the
8 perpetuation of CarMax's objectionable corporate policies.

9    38.    Plaintiff purchased the vehicle in August 2012. Shortly after purchasing
10 the vehicle, Plaintiff returned to CarMax because the brake pads needed to be replaced
11 and with complaints of a clicking noise from the engine area and malfunctioning
12 windows.

13    39.    After the 30 day warranty CarMax express warranty period, but during
14 the Infiniti express warranty and CarMax implied warranty of merchantability, the
15 check engine light came on routinely, there were problems with the transmission, the
16 ticking noise persisted, and the warning lights on his dashboard would light up in
17 clusters.

18    40.    On January 2, 2013, Plaintiff took the vehicle to Infiniti of Tustin to have
19 the car inspected and diagnosed because he no longer trusted CarMax to properly
20 inspect, diagnose, or repair, his vehicle. Plaintiff complained that the car would jerk
21 when slowing down, the engine rattled when accelerating, and the instrument cluster
22 continues to illuminate. Plaintiff feels unsafe in the vehicle.

23    41.    Prior to buying the car, Plaintiff asked if his vehicle had been in an
24 accident, CarMax assured him it had not.  However, an AutoCheck Vehicle History
25 Report states that the vehicle was in an accident in 2009.

26 ///
27 ///
28 ///

## FIRST CAUSE OF ACTION

**Violation of the Consumers Legal Remedies Act, Civil Code §1750,**
*et seq.* **- Equitable and Injunctive Relief, Only, as to all Defendants**
**except Safeco Insurance Company of America**

42. Plaintiff incorporates by reference each and every allegation set forth in the preceding and following paragraphs of this Complaint.

43. The subject vehicle constitutes "goods" bought for use primarily for personal, family or household purposes pursuant to California Civil Code §1761(a).

44. CarMax is a "person" pursuant to California Civil Code §1761(c).

45. Plaintiff is a "consumer" pursuant to California Civil Code §1761(d).

46. The advertisement and sale of the subject vehicle to Plaintiff are "transactions" pursuant to California Civil Code §1761(e).

47. Pursuant to the Consumers Legal Remedies Act ("CLRA"), the following unfair methods of competition and unfair or deceptive acts or practices are prohibited: (2) Misrepresenting the source, sponsorship, approval, or certification of goods or services; (3) Misrepresenting the affiliation, connection, or association with, or certification by, another; (5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have; (7) Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another; (9) Advertising goods or services with intent not to sell them as advertised; (14) Representing that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law; and (16) Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

48. Further, the California Legislature has recognized that a violation of Vehicle Code §11713.18 "is actionable under the [CLRA and] the [UCL]." (*See* Veh. Code §11718.13 (b).)

/ / /

49. CarMax violated the CLRA by: (1) Misrepresenting that the vehicle had been subject to a thorough 125-point inspection; (2) Misrepresenting that the vehicle was "Certified," despite failing to provide a completed inspection report indicating all the components inspected prior to sale; (3) Failing to provide an inspection report for the vehicle at any time that complies with California law; (4) Failing to disclose the defective nature of the vehicle; (5) Calling the vehicle "Certified" when CarMax does not oversee, supervise and/or enforce any "certification" standards; (6) Using the terms "Certified," "Certify," and/or similar terms in the promotion, sales and advertising of the vehicle, despite failing to provide a completed inspection report indicating all the components inspected prior to sale; (7) On information and belief, destroying the CQI/VQI Checklist after the CQI/VQI inspection took place in violation of 13 C.C.R. 272.00 and 13 C.C.R. 272.02; (8) Violating Vehicle Code §11713.18; (9) Selling a vehicle as "Certified" that would not pass a legitimate certification inspection; (10) Selling a vehicle as "Certified" that is in need of substantial repair; (11) Actively concealing and suppressing the results of the vehicle inspection when it has a duty to disclose those results; and (12) Representing that the vehicle had not been in an accident, when it had.

50. As detailed above, Plaintiff was damaged by CarMax's violations. Plaintiff paid for a Certified 2007 Infiniti. Plaintiff received an uncertified 2007 Infiniti. Thus, a component of Plaintiff's damages is the difference in value between a Certified 2007 Infiniti and an uncertified 2007 Infiniti.

51. Plaintiff was also damaged because he suffered opportunity costs due to CarMax's misrepresentations. Plaintiff relied upon CarMax's representations that the vehicle was "Certified." Plaintiff suffered opportunity costs because CarMax's misrepresentations diverted Plaintiff from finding an authentic "Certified" pre-owned vehicle.

52. Finally, Plaintiff was damaged by CarMax's fraudulent concealment of the true condition of the vehicle. The vehicle has experienced many mechanical defects since Plaintiff purchased it. CarMax fraudulently concealed the true condition of the

1  vehicle by concealing the results of its inspection. Plaintiff would have paid less and/or
2  not purchased the vehicle if CarMax had disclosed its true condition. Furthermore,
3  CarMax represented that the car had not been in an accident, when it had.

4      53.    Plaintiff, concurrent with the filing of this Complaint, mailed to
5  Defendants, via certified and regular mail, a copy of this lawsuit, which seeks equitable
6  and injunctive relief, only under the CLRA, and serves as notice to CarMax of its
7  violations of the CLRA. No monetary damages are sought under the CLRA at this time.
8  Only equitable and injunctive relief are sought at this time.

9      54.    The CLRA provides that a complaint for violations of that statutory act
10 may be amended without leave of court should the violations not be remedied within
11 thirty (30) days of notification. Plaintiff will amend this Complaint to add a claim for
12 damages under the CLRA for violations of California Civil Code §§1770(a)(2), (3), (5),
13 (7), (9), (14), and (16), should the violations complained of herein not be remedied within
14 the requisite time frame. In addition to actual, statutory, general, incidental, and
15 consequential damages, Plaintiff will seek punitive damages from CarMax for its
16 malicious, oppressive and fraudulent acts against Plaintiff. Plaintiff does not seek
17 damages of any kind under the CLRA at this time.

18 .    55.    Civil Code §1780(a)(2) of the CLRA provides that a consumer is entitled
19 to an injunction prohibiting acts or practices which violate the CLRA. Plaintiff seeks an
20 order enjoining CarMax from the acts, methods, and practices as set forth in Paragraph
21 49 of this Complaint.

22     56.    Pursuant to California Civil Code §1780(d), Plaintiff may also recover
23 attorney's fees and costs according to proof at time of trial.

24     57.    The RIC for the vehicle includes the following language:
25 / / /
26 / / /
27 / / /
28 / / /

1    NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS
     SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR
2    COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES
     OBTAINED  PURSUANT  HERETO  OR  WITH  THE  PROCEEDS
3    HEREOF, RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT
     EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.
4

5        58.    This Notice makes Santander liable, contractually and under State law,

6    for all claims and defenses that could be raised against CarMax, with respect to the

7    purchase/sale of the vehicle. Santander is, therefore, liable for the acts of CarMax as

8    stated herein.

9                          SECOND CAUSE OF ACTION

10      Violation of the Song-Beverly Consumer Warranty Act, Civil Code §1790,
        et seq. - as to all Defendants except Safeco Insurance Company of America
11

12       59.    Plaintiff incorporates by reference each and every allegation set forth in

13   the preceding and following paragraphs of this Complaint.

14       60.    Pursuant to the Song-Beverly Consumer Warranty Act (hereinafter

15   "Song-Beverly") Civil Code §1790 et seq., the vehicle constitutes "consumer goods"

16   purchased primarily for family or household purposes and Plaintiff has used the vehicle

17   primarily for those purposes.

18       61.    Plaintiff is a "buyer" of consumer goods under Song-Beverly.

19       62.    Defendant is a "seller" and "retailer" under Song-Beverly.

20       63.    CarMax provided a 30 day/1,000 mile express and implied warranty on the

21   vehicle.

22       64.    The  vehicle  was  delivered  to  Plaintiff  with  serious  defects and

23   nonconformities, including but not limited to a defective and malfunctioning engine,

24   transmission, instrument panel, and accident damage.

25       65.    The  foregoing  defects  and  nonconformities  to  warranty  manifested

26   themselves  within  the  applicable  implied  and  express  warranty  periods.    The

27   nonconformities substantially impair the use, value and/or safety of the vehicle and

28   violate the implied warranty of merchantability.

66.    In order to meet the implied warranty of merchantability consumer goods must meet each of the following criteria: (1) Pass without objection in the trade under the contract description; (2) Be fit for the ordinary purposes for which such goods are used; (3) Be adequately contained, packaged and labeled; and (4) Conform to the promises or affirmations of fact made on the container or label.

67.    The implied warranty of merchantability has been breached, in that, among other matters: (1) Given the Certified designation, the vehicle would not pass without objection in the trade under the representations of the CarMax program because, among other things, the vehicle had substantial mechanical defects and accident damage; (2) The vehicle was not adequately labeled as it was not a properly certified vehicle; and (3) The vehicle did not conform to the promises and affirmations of CarMax's certified program.

68.    Plaintiff is entitled to justifiably revoke acceptance of the vehicle under Song-Beverly.

69.    Plaintiff is entitled to and seeks damages and other legal and equitable relief, including, but not limited to, all incidental, consequential and general damages resulting from CarMax's failure to comply with its obligations under Song-Beverly.

70.    Plaintiff is entitled under Song-Beverly to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses, including attorneys' fees, reasonably incurred in connection with the commencement and prosecution of this action.

71.    The RIC for the vehicle includes the following language:

NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF, RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

72.    This Notice makes Santander liable, contractually and under State law, for all claims and defenses that could be raised against CarMax, with respect to the

13

1  purchase/sale of the vehicle. Santander is, therefore, liable for the acts of CarMax as
2  stated herein.

### THIRD CAUSE OF ACTION

#### Fraud and Deceit - as to all Defendants
#### except Safeco Insurance Company of America

6      73.    Plaintiff incorporates by reference each and every allegation set forth in
7  the preceding and following paragraphs of this Complaint.

8      74.    CarMax fraudulently misrepresented that the vehicle was a "Certified"
9  vehicle when it was not. CarMax also represented that the vehicle had not sustained
10 accident damage when it had.

11     75.    CarMax describes its vehicles as "Certified." However, CarMax does not
12 comply with California law regarding selling "Certified" vehicles.

13     76.    CarMax was aware that its advertisements and representations were false
14 because it was CarMax's expressly stated corporate policy to fail to comply with the
15 prerequisites, set forth in Vehicle Code §11713.18, for calling its vehicles "Certified."

16     77.    One of the substantial factors in Plaintiff's decision to visit, and purchase
17 a vehicle from CarMax was the fact that CarMax certified its vehicles. Plaintiff also
18 relied upon CarMax's representation that the vehicle had not sustained any accident
19 damage.

20     78.    Plaintiff was harmed by CarMax's fraudulent misrepresentation because
21 Plaintiff would have paid less and/or not purchased the vehicle if CarMax had not
22 represented that the vehicle was "Certified" and free of accident damage.

23     79.    CarMax actively concealed and suppressed the results of its vehicle
24 inspection. CarMax suppressed the results of its vehicle inspection by failing to provide
25 a completed inspection report indicating all the components inspected prior to sale.

26     80.    The active concealment and suppression of the results of the inspection of
27 the vehicle occurred on or about August 24, 2012, the date Plaintiff purchased the
28 vehicle at CarMax's Costa Mesa location. (RIC attached hereto as Exhibit 1.)

81.     Plaintiff is informed and believes that CarMax actively concealed the results of its vehicle inspection by destroying the CQI/VQI Checklist after the CQI/VQI inspection took place. Plaintiff's belief is based on the fact that it is CarMax's stated corporate policy to destroy CQI/VQI Checklists and not provide them to consumers. Whether CarMax destroyed the CQI/VQI Checklist for Plaintiff's vehicle is peculiarly within the knowledge of CarMax. The date and place of CarMax's destruction of the CQI/VQI Checklist for Plaintiff's vehicle are also peculiarly within the knowledge of CarMax. Finally, the particular identities of the employees responsible for the destruction of the CQI/VQI Checklist are peculiarly within the knowledge of CarMax.

82.     CarMax had a duty to disclose the results of its vehicle inspection. A dealer cannot "advertise for sale or sell a used vehicle as 'certified' or use any similar descriptive term" if the dealer does not comply with the requirements set forth in Vehicle Code §11713.18. §11713.18(a)(6) states that it is a violation if "Prior to sale, the dealer fails to provide the buyer with a completed inspection report indicating all the components inspected." Because CarMax called the vehicle "Certified," Vehicle Code §11713.18(a)(6) directly imposed a duty to provide a completed inspection report indicating all the components inspected prior to sale.

83.     CarMax intentionally concealed and suppressed the results of the vehicle inspection because it is CarMax's express corporate policy to provide a generic list of components - a "Carmax Quality Inspected ("CQI") Certificate" - that were purportedly inspected, without disclosing the *results* of the inspection. The particular identities of the employees, officers, or directors that are responsible for this policy are within the superior knowledge of CarMax.

84.     CarMax instituted the policies above to intentionally undermine protections granted to consumers by state law. CarMax actively opposed the passage of the Car Buyer's Bill of Rights, which created the requirements of Vehicle Code §11713.18(a)(6). (Exhibit 2, Letter Sent by CarMax Auto Superstores, Inc. to the Chair of the Assembly Judiciary Committee on February 28, 2005.) When the Car Buyer's Bill

1  of Rights was passed on or about June 1, 2006, CarMax declined to change its practices
2  to conform to the new law. Therefore, CarMax knows that it is illegal to use the term
3  "certified" or any similar descriptive term in its sales or advertising if, "Prior to sale, the
4  dealership fails to provide the buyer with a completed inspection report indicating all
5  the components inspected," but intentionally instituted and continued corporate policies
6  that undermined protections granted to consumers by the Vehicle Code.

7      85.    Plaintiff was unaware of the results of the inspection of the vehicle. Had
8  Plaintiff been presented with the results of the inspection of the vehicle, Plaintiff would
9  not have purchased the vehicle, or would have purchased it for a lower price.

10     86.    Plaintiff was harmed as a result of CarMax's active concealment and
11  suppression of the results of the inspection of the vehicle because Plaintiff would not
12  have purchased the vehicle, or would have purchased it for a lower price.

13     87.    Plaintiff is entitled to punitive damages pursuant to Civil Code §3294.
14  CarMax, to make more money, intentionally undermined protections granted consumers
15  by state law. CarMax's intentional acts harm consumers and create profit for CarMax
16  because consumers, including Plaintiff, are denied information, and purchase vehicles
17  that they would not otherwise purchase. Punitive damages are proper to deter
18  CarMax's acts deemed socially unacceptable and to discourage the perpetuation of
19  CarMax's objectionable corporate policies.

20     88.    The RIC for the vehicle includes the following language:

21         NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS
           SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR
22         COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES
           OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS
23         HEREOF, RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT
           EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.
24

25     89.    This Notice makes Santander liable, contractually and under State law,
26  for all claims and defenses that could be raised against CarMax, with respect to the
27  purchase/sale of the vehicle. Santander is, therefore, liable for the acts of CarMax as
28  stated herein.

1

## FOURTH CAUSE OF ACTION

2 **Violation of Business & Professions Code §17200, *et seq.* - as to all**
**Defendants except Safeco Insurance Company of America**

3

4      90.    Plaintiff incorporates by reference each and every allegation set forth in

5 the preceding and following paragraphs of this Complaint.

6      91.    CarMax committed acts of unfair competition, as defined by Business and

7 Professions Code §17200, *et seq.* As set forth more fully above, CarMax has engaged in

8 a course of conduct of systematically violating the consumer laws in this State

9 prohibiting the commitment of deceptive practices, including the laws of fraud and

10 deceit, and the various prohibitions contained in the California Code of Regulations, the

11 California Vehicle Code, the Song-Beverly Consumer Warranty Act, and the Consumers

12 Legal Remedies Act.

13      92.    CarMax has engaged in "unlawful" business acts and/or practices by:

14 (1) Misrepresenting that the vehicle had been subject to a thorough 125-point

15 inspection; (2) Misrepresenting that the vehicle was "Certified," despite failing to

16 provide a completed inspection report indicating all the components inspected prior to

17 sale; (3) Failing to provide an inspection report for the vehicle at any time that complies

18 with California law; (4) Failing to disclose the defective nature of the vehicle; (5) Calling

19 the vehicle "Certified" when CarMax does not oversee, supervise and/or enforce any

20 "certification" standards; (6) Using the terms "Certified," "Certify," and/or similar terms

21 in the promotion, sales and advertising of the vehicle, despite failing to provide a

22 completed inspection report indicating all the components inspected prior to sale; (7) On

23 information and belief, destroying the CQI/VQI Checklist after the CQI/VQI inspection

24 took place in violation of 13 C.C.R. 272.00 and 13 C.C.R. 272.02; (8) Violating Vehicle

25 Code §11713.18; (9) Selling a vehicle as "Certified" that would not pass a legitimate

26 certification inspection; (10) Selling a vehicle as "Certified" that is in need of substantial

27 repair; (11) Actively concealing and suppressing the results of the vehicle inspection

28 / / /

1  when it has a duty to disclose those results; and (12) Representing that the vehicle had

2  not been.in an accident, when it had.

3      93.    The harm to Plaintiff outweighs the utility of CarMax's policies and

4  practices particularly considering the available alternatives, and that CarMax's policies

5  and practices are immoral, unscrupulous, unethical and against public policy. CarMax's

6  policies and practices consequently constitute an "unfair" business act or practice within

7  the meaning of Business and Professions Code §17200.

8      94.    CarMax's deceptive policies and practices as set forth above also are likely

9  to and/or have deceived Plaintiff. Thus, CarMax has also engaged in "fraudulent"

10  business practices.

11      95.    CarMax has engaged in, and continues to engage in, the same form of

12  deceptive acts and practices.

13      96.    CarMax's unlawful, unfair and fraudulent business practices present a

14  continuing threat to Plaintiff and others in that CarMax will continue utilizing similar

15  policies and practices.

16      97.    Business and Professions Code §17203 provides that Plaintiff is entitled

17  to an order enjoining CarMax from engaging in acts or practices that violate Business

18  and Professions Code §17200, as well as providing for equitable monetary relief so as

19  to preclude the retention of all ill-gotten monies by CarMax or so as to restore any

20  monies wrongfully obtained by CarMax to Plaintiff. Plaintiff has lost money and

21  suffered injury in fact as a result of CarMax's illegal conduct. Plaintiff seeks such

22  equitable monetary relief.

23      98.    The RIC for the vehicle includes the following language:

24      NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS
        SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR
25      COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES
        OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS
26      HEREOF, RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT
        EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.
27

28  ///

1    99.    This Notice makes Santander liable, contractually and under State law,
2  for all claims and defenses that could be raised against CarMax, with respect to the
3  purchase/sale of the vehicle. Santander is, therefore, liable for the acts of CarMax as
4  stated herein.

5                                **FIFTH CAUSE OF ACTION**

6                      **Violation of Vehicle Code §11711 - as to**
7                      **Safeco Insurance Company of America, Only**

8    100.    Plaintiff incorporates by reference each and every allegation set forth in
9  the preceding and following paragraphs of this Complaint.

10   101.    As a condition of obtaining a license from the California DMV to sell
11  vehicles, CarMax was required by Vehicle Code §11710 to obtain, and did obtain, a
12  surety bond in the amount of $50,000 from Safeco.

13   102.    Safeco issued Bond #6564400, effective April 25, 2008, to CarMax, to
14  fulfill its obligations under Vehicle Code §11710. The bond issued to CarMax was in
15  effect on the date of the incidents alleged in this Complaint.

16   103.    Pursuant to Vehicle Code §11710(a), the bond was issued to CarMax and
17  made payable to "a purchaser" in the case of "fraud" by CarMax.

18   104.    Plaintiff is a purchaser within the meaning of Vehicle Code §11710(a).
19  Fraud, as that term is used in Vehicle Code §11710(a), is the same fraud as commonly
20  defined in the law, including fraud as defined in Civil Code §§1571, 1572, 1573 and
21  Vehicle Code §11710(a). *See Beverly Finance Co. v. American Casualty Co. of Reading*
22  (1969) 273 Cal.App.2d 259.

23   105.    As set forth herein, Defendant, CarMax, has committed fraud within the
24  meaning of Civil Code §§1571, 1572, 1573 and Vehicle Code §11710(a).

25   106.    Vehicle Code §11711(a) provides a consumer with a cause of action against
26  the bond if a dealership committed fraud. Plaintiff alleges that CarMax committed
27  fraud in the sale of the vehicle to him by: (1) Misrepresenting that the vehicle had been
28  subject to a thorough 125-point inspection; (2) Misrepresenting that the vehicle was

19

1  "Certified," despite failing to provide a completed inspection report indicating all the
2  components inspected prior to sale; (3) Failing to provide an inspection report for the
3  vehicle at any time that complies with California law; (4) Failing to disclose the
4  defective nature of the vehicle; (5) Calling the vehicle "Certified" when CarMax does not
5  oversee, supervise and/or enforce any "certification" standards; (6) Using the terms
6  "Certified," "Certify," and/or similar terms in the promotion, sales and advertising of the
7  vehicle, despite failing to provide a completed inspection report indicating all the
8  components inspected prior to sale; (7) On information and belief, destroying the
9  CQI/VQI Checklist after the CQI/VQI inspection took place in violation of 13 C.C.R.
10 272.00 and 13 C.C.R. 272.02; (8) Violating Vehicle Code §11713.18; (9) Selling a vehicle
11 as "Certified" that would not pass a legitimate certification inspection; (10) Selling a
12 vehicle as "Certified" that is in need of substantial repair; (11) Actively concealing and
13 suppressing the results of the vehicle inspection when it has a duty to disclose those
14 results; and (12) Representing that the vehicle had not been in an accident, when it had.

15         107.   Safeco is liable under the bond to CarMax, based on the fraud of CarMax,
16 in the amount of the purchase price of the vehicle, or such other sum as is established
17 at the time of trial, according to proof.

18         Accordingly, Plaintiff prays for judgment as follows and as permitted as to each
19 cause of action:

20     1.  For general damages according to proof at trial, excluding the Consumers
21         Legal Remedies Act at this time;

22     2.  For rescission of the purchase contract;

23     3.  For incidental and consequential damages according to proof at trial,
24         excluding the Consumers Legal Remedies Act at this time;

25     4.  For punitive damages based on the Fraud and Deceit cause of action, only,
26         at this time;

27     5.  No request for punitive damages is made as to Santander or Safeco;

28 ///

6.  For the equitable and injunctive relief permitted under Civil Code §1780 and Business & Professions Code §17200;

7.  For pre-judgment interest at the legal rate;

8.  For reasonable attorney's fees and costs of suit as permitted by law (including, but not limited to, Civil Code §§1780(d), 1794, Code of Civil Procedure §1021.5, and the bond company claims);

9.  For such other and further relief as the Court deems just and proper under the circumstances;

10. No request for damages of any type are sought under the Consumers Legal Remedies Act at this time; and,

11. Relief under Business & Professions Code §17200 as limited as provided by law.

Dated: July 31, 2013                                ROSNER, BARRY & BABBITT, LLP

                                                    By: _____
                                                        Sharon E. Glassey
                                                        Attorney for Plaintiff

21

AMENDED COMPLAINT

# EXHIBIT 1

| | | | |
|---|---|---|---|
| E. SUBTOTAL (A(14) + D(6) + C) | | $ | 27,309.42 |

**I. DOWN PAYMENT**

| | | |
|---|---|---|
| 1. "Trade In" | | |
| a. Value of "Trade In" | $ | .00 |
| b. Prior Credit or Lease Balance | $ | .00 |
| 2. Net Value of "Trade-In" (If (1b) exceeds 1(a) a negative number will appear) | $ | .00 |
| 3. Manufacturer's Rebate | $ | .00 |
| 4. Cash Down Payment | $ | 3,000.00 |
| 5. Other  N/A | $ | .00 |
| 6. Total Down Payment (If the total down payment is a negative number, a zero will appear and the amount still owed will appear in A(13).) | $ | 3,000.00 |
| F. AMOUNT FINANCED (D - (E9)) | $ | 24,309.42 |

- Seller may retain a portion of amounts.

TITLE HOLDER IF COLLATERAL  "Santander Consumer"

REGISTRANT  TRAVIS Z GONZALES

PHYSICAL DAMAGE DEDUCTIBLE: Comprehensive $ 500.00   Collision $ 500.00

INSURANCE COMPANY  AAA

POLICY NUMBER  GS406606

EFFECTIVE DATE  10/20/2011   EXPIRATION DATE  N/A

AGENT NAME  AGENT   TELEPHONE NUMBER  (800) 672 5246

AGENT ADDRESS  N/A

YOU AGREE THAT YOU VOLUNTARILY SELECTED THE ABOVE INSURANCE AGENT, BROKER OR COMPANY AND THAT SUCH CHOICE WAS NOT MADE A CONDITION PRECEDENT TO THE EXTENSION OF CREDIT UNDER THIS CONTRACT.

BUYER

CO-BUYER

SELLER

UNLESS A CHARGE IS INCLUDED IN THIS AGREEMENT FOR PUBLIC LIABILITY OR PROPERTY DAMAGE INSURANCE, PAYMENT FOR SUCH COVERAGE IS NOT PROVIDED BY THIS AGREEMENT.

**Seller Assisted Loan**

If the Seller assisted you in obtaining a loan to pay for part of the downpayment or purchase price of the vehicle, you will be obligated to repay the loan, and the installment payments under this Contract.

Amount of Loan $  N/A   Finance Charge $  N/A

Total $  N/A   repayable in  N/A   installments of

$  N/A   You may be required to pledge security for the loan.

**Waiver of Confidentiality**

By signing below, you agree to waive your right, under California Vehicle Code §1808.21 to keep confidential your resident address as maintained in the records of the California Department of Motor Vehicles. This waiver will apply only to a financial institution licensed by the state or federal government to do business in California that acquires an interest in this Contract.

**BROKER FEE DISCLOSURE**

If this Contract is for the sale of a new vehicle, then this Contract:
- is not subject to an autobroker fee.
- is subject to a fee received by the following autobroker:

**THE PROVISIONS ON THE BACK ARE PART OF THIS CONTRACT.**

**Agreement to Arbitrate**

By signing below you represent that you have read and agree to the Arbitration Provisions on the back.

**THERE IS NO COOLING-OFF PERIOD UNLESS YOU OBTAIN A CONTRACT CANCELLATION OPTION**

California law does not provide for a "cooling-off" or other cancellation period for vehicle sales. Therefore, you cannot later cancel this contract simply because you change your mind, decide the vehicle costs too much, or wish you had acquired a different vehicle. After you sign below, you may only cancel this contract with the agreement of the seller or for legal cause, such as fraud.

However, California law does require a seller to offer a 2-day contract cancellation option on used vehicles with a purchase price of less than $40,000, subject to certain statutory conditions. This contract cancellation option requirement does not apply to the sale of a recreational vehicle, a motorcycle, or an off-highway motor vehicle subject to identification under California law. See the vehicle contract cancellation option agreement for details.

**NOTICE TO BUYER:**

(1) Do not sign this agreement before you read it, or if it contains any blank spaces to be filled in. (2) You are entitled to a completely filled-in copy of this agreement. (3) You can prepay the full amount due under this agreement at any time. (4) If you default in the performance of your obligations under this agreement, the vehicle may be repossessed and you may be subject to suit and liability for the unpaid indebtedness evidenced by this agreement.

YOU ACKNOWLEDGE RECEIPT OF A COMPLETELY FILLED-IN COPY OF THIS CONTRACT AND ANY OTHER DOCUMENTS THAT YOU SIGNED DURING CONTRACT NEGOTIATIONS AT THE TIME OF SIGNING.

Buyer   Date  Aug 24, 2012   Co-Buyer   Date

Seller  CarMax Auto Superstore California, L.L.C.   By

**ASSIGNMENT**

Seller  Santander Consumer

Seller hereby sells, assigns and transfers to _____ (Assignee) this Contract, all obligations of Buyer and Co-Buyer hereunder, all rights, powers, and privileges herein given to Seller and all right, title, and interest of Seller in and to the property securing this Contract. If on the date of this assignment there is in effect a Dealer Agreement between Seller and Assignee pertaining to the sale of contracts by Seller to Assignee, this sale and assignment of this Contract to Assignee is made subject to all of the terms and conditions of that Dealer Agreement.

(Seller/Assignor)   By   Title   Date

**Your Representations.** You promise that you have given true and correct information in your credit application. You understand that in entering this Contract we have relied on the representations you have made to us. Upon request, you agree to provide us with documents and other information necessary to verify any item contained in your credit application.

**Late Charge.** If you fail to pay any installment for more than 10 days after the date it is due, you will pay a late charge of 5% of the unpaid amount of the installment.

**NSF Fees.** If a check, draft, or order presented to us for payment is returned unpaid you will be charged the maximum NSF fee allowable under applicable law, not to exceed $15

**Care, Use, and Location of the Vehicle.** You agree to pay us all you owe under this Contract even if the Vehicle is damaged, destroyed, or missing. You agree to keep the Vehicle in good condition and repair. If there is any loss or damage to the Vehicle, you will give us prompt written notice of the loss or damage. You agree not to use the Vehicle for hire or to sell, rent, lease, or transfer any interest in the Vehicle or this Contract. You agree that you will not permit the Vehicle to be used in any illegal manner or expose the Vehicle to misuse, seizure, confiscation, or involuntary transfer. The Vehicle will be kept at the address you provided to us in this Contract as shown on Page 1. You agree to notify us in writing of any change in your address or the location at which the Vehicle is regularly located. You are not allowed to remove the Vehicle from the United States. You may, however, take the Vehicle to Canada as long as it is for a period of 30 days or less.

**Insurance Requirements.** You agree to have physical damage insurance covering loss or damage to the Vehicle as long as amounts are owed under this Contract. The insurance must have comprehensive, collision, fire, and theft coverage in amounts acceptable to us and with the minimum available deductible. All required insurance must be with a properly licensed insurer reasonably acceptable to us and must name us as an additional insured and loss-payee. You agree to give us evidence of all required insurance promptly upon request. You agree that any insurance proceeds payable due to damage or loss of the Vehicle will be paid directly and solely to us. At our choice, we may use the insurance proceeds to repair the Vehicle or to pay amounts owed under this Contract. You agree that we may settle any insurance claim or sign any insurance checks on your behalf as necessary and if allowed by law.

**Failure to Maintain Insurance.** If you fail to maintain the required physical damage insurance, we may buy it for you. At our choice, the insurance we buy may only cover our interest in the Vehicle and be limited to what you owe under this Contract at the time. This means the insurance we obtain may not cover your interest in the Vehicle or any loss that you incur. We will charge you for any insurance we purchase. The insurance we buy may cost more than the insurance you could buy on your own. The charge for the insurance will be the amount advanced for it and a finance charge at the Annual Percentage Rate shown on Page 1 of this Contract or, if less, the highest rate allowed by law.

**Optional Service or GAP Contracts.** This Contract may contain charges for an optional service or GAP contract. If you are in default under this Contract or the vehicle is repossessed, you agree that Creditor, to the extent permitted by applicable law, may claim benefits under any optional contract or cancel it to obtain a refund for unearned charges. Any benefits and/or refunds received shall be applied toward your obligations under this Contract in accordance with applicable law. If you cancel an optional contract, you authorize Creditor to receive any refunds due you, which shall be applied by Creditor toward your obligations under this Contract in accordance with applicable law.

**Default and Required Repayment in Full.** You will be in default if you fail to make any payment required by this Contract. You will also be in default if you break any other promise you have made in this Contract or if a bankruptcy or insolvency proceeding is initiated by you or against you. If you default we may require that you pay all you owe on this Contract at once subject to any right you may have to reinstate this Contract. All amounts owed following your default will continue to accrue finance charge or interest at the Annual Percentage Rate shown on Page 1 of this Contract or the highest rate allowed by law until paid in full.

**Other Remedies Upon Default.** Upon your default we may take (repossess) the Vehicle from you as long as we do so peacefully. All accessories, equipment or replacement parts will remain with the Vehicle following repossession.

**Selling the Vehicle and Property Back After Repossession.** If we repossess the Vehicle, you have the right to get it back until we sell it. This is your right to redeem. We will tell you what you need to do or how much you need to pay to redeem the Vehicle. If any personal property is in the Vehicle, we will store it for you at your expense. If you do not pick up your personal property, we will sell it in the law allows us to do so.

**Sale of the Repossessed Vehicle.** We will send you a written notice of sale before we sell the Vehicle. We will apply money from a sale to our expenses and then to amounts you owe under this Contract. Our expenses may include costs incurred by us in repossessing the Vehicle, holding and storing it, preparing it for sale, and selling it. If there is money left over we will pay it to you unless we are required to pay it to someone else. If there is not enough money to pay all you owe, you will have to pay us the remaining balance

**"Trade-In" and Down Payment.** You promise that you own and have valid title to any vehicle you sold to us as a "trade-in." You represent that any "trade-in" vehicle is free from any lien or security interest except as you have disclosed to us in writing. You promise that you have made the down payment shown in the Itemization of Amount Financed on Page 1 of this Contract and that you have not borrowed it.

**Collection Costs.** Following any notice required by law, you agree to pay our reasonable attorney fees, plus court costs, if we retake this Contract for collection or disbursement to an attorney who is not our salaried employee.

**Title, Taxes, and Other Charges.** You agree to make sure that the title to the Vehicle shows our security interest. You also agree that we will be the only party with a security interest in the Vehicle and that our security interest will be the only security interest that appears on the title. You agree that you are, and will be, the registered owner of the Vehicle and that you will comply with all registration, licensing, tax, and title laws that apply to the Vehicle. You agree to pay when due all taxes, fees, repair bills, storage bills, fines, assessments, and other charges relating to the Vehicle. At our choice, we may pay any of these items to protect our interest in the Vehicle. If we do so and if allowed by law, you agree to repay us at our request.

**Delay in Enforcing Rights.** We will not lose any of our rights under this Contract if we delay or refrain from enforcing them. For example, we may extend the time for making some payments without extending others. Our acceptance of any late or partial payment does not excuse your late or partial payment or mean that you may continue to make late or partial payments

**Applicable Law.** This Contract shall be governed by federal law and California law, except as otherwise provided in this Contract. If any provision is found to be ineffective under any applicable law or regulation, the remainder of this Contract shall not be affected and shall continue to be binding and effective.

**Application of Payments and Partial Prepayment.** We may apply each payment first to earned and unpaid finance charge and to other amounts you owe under this Contract in any order we choose. If you make a partial prepayment, you must still continue to make your regular monthly payments as scheduled in this Contract.

**Entire Agreement.** This Contract contains the entire agreement between you and us relating to this Contract. We may agree to extend or defer a payment and provide you written confirmation. Any other change to this Contract must be in a writing signed by us. No oral modifications to this Contract are binding.

**Communications.** You agree that we may monitor and record telephone calls regarding this Contract. You expressly consent that we may contact you for calls, emails, text messages or other electronic messages for any purpose related to this Contract by any means, including but not limited to the use of bypass/automatic/artificial voice messages or automatic telephone dialing devices. Your express consent applies to any email addresses or telephone numbers we obtain or you provide to us by any manner and at any time, including emails addresses or cellular telephone numbers for which you may incur voice, data or other charges.

---

The following notice applies only to purchases primarily for personal, family, or household purposes.

## NOTICE:

ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

---

The CarMax Warranty Brochure contains the details of the Limited Warranty.

LIMITATION OF WARRANTIES: CARMAX MAKES NO EXPRESS WARRANTIES UNLESS SEPARATELY SET FORTH IN WRITING. ANY AND ALL IMPLIED WARRANTIES APPLICABLE TO THE PRODUCTS SOLD HEREUNDER, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE, ARE LIMITED TO THE DURATION OF THE WRITTEN LIMITED WARRANTY GIVEN BY CARMAX, IF ANY.

To the extent allowed by applicable law, CarMax shall not be liable for any damages relating to loss of use of the products, loss of time, inconvenience or commercial loss, or any other incidental or consequential damages. Any and all warranties are extended only to the original purchaser.

SOME STATES DO NOT ALLOW LIMITATIONS ON HOW LONG AN IMPLIED WARRANTY LASTS OR EXCLUSION OR LIMITATIONS ON RELIEF SUCH AS INCIDENTAL OR CONSEQUENTIAL DAMAGES, SO THE ABOVE LIMITATION MAY NOT APPLY TO YOU. THIS WARRANTY GIVES YOU SPECIFIC LEGAL RIGHTS, AND YOU ALSO MAY HAVE OTHER RIGHTS WHICH VARY FROM STATE TO STATE.

"Trade-In" and Down Payment. You promise that you own and have valid title to any vehicle you sold to us as a "Trade-In." You represent that any "Trade-In" vehicle is free from any lien or security interest except as you have disclosed to us in writing. You promise that you have made the downpayment shown in the Itemization of Amount Financed on Page 1 of this Contract and that you have not borrowed it.

RELIEF SUCH AS INCIDENTAL OR CONSEQUENTIAL DAMAGES, SO THE ABOVE LIMITATION MAY NOT APPLY TO YOU. THIS WARRANTY GIVES YOU SPECIFIC LEGAL RIGHTS, AND YOU ALSO MAY HAVE OTHER RIGHTS WHICH VARY FROM STATE TO STATE.

VEHICLE RETURN POLICY. You may return the vehicle to CarMax for a refund and rescind this Contract within 5 calendar days if the condition of the vehicle does not change. This policy only applies to used vehicles.

## ARBITRATION PROVISION

This Arbitration Provision describes when and how a Claim (defined below) shall be arbitrated. Arbitration is a way of resolving disputes before one or more neutral persons, instead of having a trial in court before a judge and/or jury. **By signing this Contract, you and we agree to be bound by the terms of this Arbitration Provision.**

For purposes of this Arbitration Provision, references to "we," "us" and "our" mean the Seller, including its respective subsidiaries, affiliates, agents, employees and officers, or anyone to whom the Seller transfers its rights under this Contract.
IF YOU OR WE CHOOSE ARBITRATION, THEN ARBITRATION SHALL BE MANDATORY, AND:

* ANY CLAIM WILL BE DECIDED BY ARBITRATION AND NOT IN COURT OR BY A JURY TRIAL.
* DISCOVERY AND RIGHTS TO APPEAL ARE LIMITED BY THE ARBITRATION RULES OF THE ARBITRATION ADMINISTRATOR.
* YOU GIVE UP YOUR RIGHT TO PARTICIPATE AS A REPRESENTATIVE OR MEMBER OF A CLASS IN A CLASS ACTION ("CLASS ACTION WAIVER").
* OTHER RIGHTS THAT YOU OR WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.

a. **What Claims are Covered.** A "Claim" is any claim, dispute or controversy between you and us that in any way arises from or relates to this consumer credit sale, the purchase you are financing by way of this Contract, the vehicle and related goods and services that are the subject of the purchase and this Contract, or the collection or servicing of this Contract, including but not limited to:

* initial claims, counterclaims, cross-claims and third-party claims;
* Disputes based on contract, tort, consumer rights, fraud and other intentional torts (at law or in equity including any claim for injunctive or declaratory relief);
* Disputes based on constitutional grounds or on laws, regulations, ordinances or similar provisions; and
* Disputes about the validity, enforceability, arbitrability or scope of this Arbitration Provision or this Contract, subject to paragraph (j) of this Arbitration Provision.

b. **Commencing Arbitration.** Either you or we may require any Claim to be arbitrated by first sending to the other party, by certified mail, a written notice of dispute ("Notice"). This Notice shall (i) describe the nature and basis of the Claim and (ii) set forth the specific relief sought. If we do not reach an agreement to resolve the Claim within 30 days after the Notice is received, you or we may commence an arbitration proceeding.

Arbitration of a Claim must comply with this Arbitration Provision and the applicable rules and procedures of the Arbitration Administrator. Arbitration is not mandatory for an individual Claim that you or we may choose to bring in small claims court or the state's equivalent court, if any. If that Claim is transferred, removed or appealed to a different court, you or we then may choose arbitration.

c. **Choosing the Administrator.** If you initiate the arbitration proceeding, you may choose either of the following arbitration Administrators: (1) American Arbitration Association, 1633 Broadway, 10th Floor, New York, NY 10019, www.adr.org, (800) 778-7879 or (2) JAMS, 1920 Main Street, Suite 300, Irvine, CA 92614, www.jamsadr.com, (800) 352-5267. The Administrator you choose will have rules that apply to the proceeding. Important information regarding the arbitration process and more complete information regarding arbitration procedures may be found at either Administrator's website. If the Administrator you choose is unable or unwilling to serve as the Administrator, you or we may choose the other Administrator. If both Administrators are unable or unwilling or cease to serve as the Administrator, you or we may choose another Administrator, subject to the other's approval. In all cases, any arbitrator must be a lawyer or a retired judge with at least 10 years of legal experience. If we initiate the arbitration proceeding, we will give you 20 days to choose the Administrator. If you do not choose the Administrator within that time, we will choose one for you. No matter which Administrator is chosen, you shall have the right to be represented by an attorney of your own choosing, subject to any limitations in the Administrator's rules.

d. **Choosing the Location.** Any arbitration hearing that you attend must take place at a location reasonably convenient to your residence.

e. **Paying for Arbitration.** Each Administrator charges fees to administer an arbitration proceeding. This may include fees not charged by a court. When you choose an Administrator, you should carefully review the fees charged by the Administrator. The party that initiates the arbitration shall pay the initial filing fee, and fees and costs thereafter shall be paid in accordance with the rules and procedures of the Administrator. Each party must pay the expense of that party's attorneys, experts, and witnesses, regardless of which party prevails in the arbitration, unless applicable law or the Administrator's rules, procedures or standards provide otherwise.

f. **Class Action Waiver.** You give up your right to participate in a class action. This means that you may not be a representative or member of any class of claimants or act as a private attorney general in court or in arbitration with respect to any Claim. Further, unless both you and we agree otherwise, the arbitrator may not consolidate more than one person's Claim or Claims. Notwithstanding any other part of this Arbitration Provision, the validity and effect of the Class Action Waiver must be determined only by a court and not by an arbitrator. If a court limits or voids the Class Action Waiver, then this entire Arbitration Provision (except for this paragraph) will be null and void.

g. **Right to Discovery.** The parties shall have the right to discovery of non-privileged information and documents relevant to the Claim, subject to the rules and procedures of the Administrator.

h. **Arbitration Result and Right of Appeal.** Judgment upon the award given by the arbitrator may be entered in any court having jurisdiction. In response to a timely request from either party, the arbitrator must provide a brief written explanation of the basis for any award. The arbitrator's decision is final and binding, except for any right of appeal provided by the Federal Arbitration Act. Any party that appeals the award to a three-arbitrator panel administered by the Administrator, which must reconsider any aspect of the initial award requested by the appealing party. Reference in this Arbitration Provision to the "arbitrator" means the panel of arbitrators if an appeal of the arbitrator's decision has been taken. Subject to applicable law, costs of such an appeal will be borne by the appealing party regardless of the outcome of the appeal, unless applicable law or the Administrator's rules provide otherwise. However, we will consider any good faith, reasonable request for us to pay or any part of those fees if you are the appealing party.

i. **Governing Law.** This Arbitration Provision is governed by the Federal Arbitration Act and not by any state arbitration law. The arbitrator must apply applicable statutes of limitations and claims of privilege recognized at law, and applicable substantive law consistent with the Federal Arbitration Act. The arbitrator is authorized to award all individual remedies permitted by the substantive law and the rules of the Administrator applicable to the proceeding.

j. **Rules of Interpretation.** This Arbitration Provision shall survive the repayment of all amounts owed to us, the transfer of this Contract, and any bankruptcy by you (to the extent consistent with applicable bankruptcy law). Except as stated in the Class Action Waiver, in the event any portion of this Arbitration Provision is deemed unenforceable, the remainder of this Arbitration Provision shall remain in force. If there is a conflict or inconsistency between this Arbitration Provision and the applicable arbitration rules or this Contract, this Arbitration Provision shall govern.

The following Buyers Guide notice applies to the sale of used motor vehicles subject to a federal regulation:

**THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE. SPANISH TRANSLATION: GUIA PARA COMPRADORES DE VEHICULOS USADOS. LA INFORMACIÓN QUE VE EN EL FORMULARIO DE LA VENTANILLA PARA ESTE VEHÍCULO FORMA PARTE DEL PRESENTE CONTRATO. LA INFORMACIÓN DEL FORMULARIO DE LA VENTANILLA DEJA SIN EFECTO TODA DISPOSICIÓN EN CONTRARIO CONTENIDA EN EL CONTRATO DE VENTA.**

# EXHIBIT 2

MAR  2 2005

## KAHN, SOARES & CONWAY, LLP
### ATTORNEYS AT LAW

1415 L Street, Suite 400
Sacramento, California 95814-3910
Telephone (916) 448-3826
Facsimile (916) 448-3850
E-Mail: law@kscsacramento.com
www.kslawyers.com

OTHER OFFICES &
AFFILIATE OFFICES

HANFORD, CALIFORNIA
FRESNO, CALIFORNIA
OXNARD, CALIFORNIA
WASHINGTON, D.C.

AMY L. BROWN
GOVERNMENTAL ADVOCATE
E-Mail: abrown@kscsacramento.com

February 28, 2005

The Honorable Dave Jones
Chair, Assembly Judiciary Committee
State Capitol
Sacramento, CA 95814

RE:    AB 68 (Montanez) – Opposed

Dear Assembly Member Jones:

On behalf of my client, CarMax Auto Superstores, Inc. (CarMax), I write to express our opposition to AB 68 (Montanez).  CarMax is the nation's leading specialty retailer of used cars operating 58 stores in 27 markets, including four stores in California, with two set to open next month.

CarMax supports the intent of this legislation.  In fact, the CarMax business model is built on the premise of full disclosure to the consumer.  Unfortunately, rather than solving the perceived inequities borne by car buyers in California, AB 68 as currently written, would force CarMax to consider discontinuing its business operations in California.

CarMax has three concerns with the bill.  First, AB 68 contains certification language that is unworkable in numerous ways. The bill prohibits the sale of a "certified" used car unless, "the vehicle has not sustained damage that substantially impairs its use or safety to the buyer."  The ambiguity of the language prevents dealers and customers from objectively understanding what it means to be in compliance with this clause. No dealer, including CarMax, can meet this subjective standard without potentially spending years in court seeking a judicial interpretation after consumer claims have been filed. To avoid this expense and uncertainty, dealers would be forced to sell used cars 'As is' thereby eliminating quality certification programs.  Selling quality certified reconditioned automobiles is the core of CarMax' business and it is not possible for CarMax to convert to an "As Is" business model without doing substantial damage to its consumer reputation.

CarMax is also concerned with the strict liability created for odometer rollbacks. Regardless of a dealer's due diligence in researching the history of a car, there are times

LEGISLATIVE INTENT SERVICE  (800) 666-1917

AP - 62

The Honorable Dave Jones
Chair, Assembly Judiciary Committee
February 28, 2005
Page 2

when an odometer rollback cannot be determined. Carfax and Autocheck are the two main sources used by dealers, including CarMax, to determine a vehicle's true mileage. If the data contained in these databases is incorrect, CarMax will not know that an odometer has been rolled back. CarMax understands that a consumer does not wish to purchase a vehicle with inaccurate mileage. To protect the consumer in such and event, CarMax offers the consumer the option of returning the vehicle for a refund of the full purchase price or, if the consumer wishes to keep the vehicle, CarMax offers the consumer a cash credit based upon the difference between the true and represented mileage. The language in AB 68 subjects CarMax and other well-intentioned dealers to civil and criminal liability for a mistake for which they had no actual or constructive knowledge. As an alternative to this certification provision of the bill, CarMax has provided language to the author that would provide for full disclosure to the buyer regarding the certification program offered by the seller.

Our second concern is the three-day cooling off language. Simply stated, this is a market issue. CarMax offers a five-day cooling off period. Other dealers offer three days. Some offer none. The marketplace already offers a consumer the option to return a vehicle to dealers such as CarMax; there is no need for the Legislature to mandate a cooling off period.

Finally, CarMax does not support a financing cap of 2.5% on third party lender fees. Nor does CarMax support disclosing the consumer's credit score at the point of sale. CarMax does not engage in marking-up the finance rate offered to the consumer to receive a yield spread premium. CarMax consumers are offered the buy-rate offered by the third party lenders which is disclosed to the consumer at the point of sale. CarMax does not add any additional interest to the lender's buy rate. The consumer pays only the actual loan rate of the lender selected by the consumer. CarMax does sell the conditional sales contract to the finance company selected by the buyer for a flat fee. This is a payment made by the lender to CarMax which is deducted from the lender's profit and is not paid for by the consumer. This payment represents a commercial transaction between two businesses and does not result in an increased loan rate for the consumer. If the consumer obtains his or her own financing, then CarMax receives no payment at all. The consumer always has the right to shop for the best financing terms and does not have to accept any of the quoted rates of the major banks that are connected online with CarMax. Capping the amount that a third party lender pays to the dealer, in the absence of any dealer mark-up to the consumer's loan, is merely a legislative decision to increase the lender's profit at the expense of the dealer. This does not act in any manner to enhance protection of the consumer.

Furthermore, furnishing the consumer's credit score does nothing to educate the consumer at the point of sale. CarMax supports full disclosure of the rate offered by the finance company and the additional percentage points tacked on by the dealer. This would show the consumer the true cost of the financing and allow the consumer to make an informed purchase decision. Only when the buyer has access to this information can

The Honorable Dave Jones
Chair, Assembly Judiciary Committee
February 28, 2005
Page 3

he or she protect themselves from unscrupulous dealers. Credit scores come from three main credit rating agencies and are used by lenders to calculate creditworthiness using the lender's own financing decision algorithms. A simple credit score, without any knowledge of the lender's algorithms, or without knowledge of which rating agency issued the score would be meaningless to the consumer. Showing the consumer the actual financing rates (lender's and dealers mark-up, if any), along with the term of the loan, monthly payment, and total amount financed over the life of the loan give the consumer a very clear picture of the cost of the loan. CarMax supports the disclosure of this information. CarMax does not see the need or efficacy of disclosing the credit score at the point of sale. The language in AB 68 does little to protect consumers from discriminatory dealer financing mark-ups. Full disclosure of the markup, without arbitrarily capping the amount that could be charged by the dealer, would protect the consumer from making an uninformed decision without unreasonably interfering in the free marketplace.

We look forward to working with Assembly Member Montanez to address these issues in the hope of finding a mutually agreeable bill. If you have any questions about our concerns, please do not hesitate to contact me.

Respectfully,

KAHN, SOARES & CONWAY, LLP

Amy Brown

cc:     Members, Assembly Judiciary Committee
        The Honorable Cindy Montanez
        Mr. Richard Costigan, Office of Governor Arnold Schwarzenegger
        Mr. Stuart Heaton, CarMax Auto Superstores, Inc.



LEGISLATIVE INTENT SERVICE   (800) 666-1917

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):<br>Hallen D. Rosner, SBN 109740 / Sharon E. Glassey, SBN 226481<br>Rosner, Barry & Babbitt, LLP<br>10085 Carroll Canyon Road, Ste 100, San Diego, CA 92131<br>TELEPHONE NO.: (858)348-1005          FAX NO. (858)348-1150<br>ATTORNEY FOR (Name): Plaintiff Travis Gonzales | FOR COURT USE ONLY<br><br>**ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of Orange<br><br>**07/25/2013 at 09:00:54 AM**<br><br>Clerk of the Superior Court<br>By Eleanor Sutter, Deputy Clerk |
|---|---|

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Orange
STREET ADDRESS: 700 Civic Center Drive West
MAILING ADDRESS: P.O. Box 1994
CITY AND ZIP CODE: Santa Ana, 92702-1994
BRANCH NAME: Central Justice Center (CJC)

CASE NAME:
Travis Gonzales v. CarMax Auto Superstores California, LLC, et al.

| CIVIL CASE COVER SHEET<br>☒ Unlimited ☐ Limited<br>(Amount (Amount<br>demanded demanded is<br>exceeds $25,000) $25,000 or less) | Complex Case Designation<br>☐ Counter ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | CASE NUMBER<br>30-2013-00664679-CU-CO-CJC<br><br>JUDGE<br>DEPT Judge James J. Di Cesare |
|---|---|---|

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

| **Auto Tort**<br>☐ Auto (22)<br>☐ Uninsured motorist (46)<br>**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**<br>☐ Asbestos (04)<br>☐ Product liability (24)<br>☐ Medical malpractice (45)<br>☐ Other PI/PD/WD (23)<br>**Non-PI/PD/WD (Other) Tort**<br>☐ Business tort/unfair business practice (07)<br>☐ Civil rights (08)<br>☐ Defamation (13)<br>☐ Fraud (16)<br>☐ Intellectual property (19)<br>☐ Professional negligence (25)<br>☐ Other non-PI/PD/WD tort (35)<br>**Employment**<br>☐ Wrongful termination (36)<br>☐ Other employment (15) | **Contract**<br>☐ Breach of contract/warranty (06)<br>☐ Rule 3.740 collections (09)<br>☐ Other collections (09)<br>☐ Insurance coverage (18)<br>☒ Other contract (37)<br>**Real Property**<br>☐ Eminent domain/Inverse condemnation (14)<br>☐ Wrongful eviction (33)<br>☐ Other real property (26)<br>**Unlawful Detainer**<br>☐ Commercial (31)<br>☐ Residential (32)<br>☐ Drugs (38)<br>**Judicial Review**<br>☐ Asset forfeiture (05)<br>☐ Petition re: arbitration award (11)<br>☐ Writ of mandate (02)<br>☐ Other judicial review (39) | **Provisionally Complex Civil Litigation**<br>(Cal. Rules of Court, rules 3.400–3.403)<br>☐ Antitrust/Trade regulation (03)<br>☐ Construction defect (10)<br>☐ Mass tort (40)<br>☐ Securities litigation (28)<br>☐ Environmental/Toxic tort (30)<br>☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)<br>**Enforcement of Judgment**<br>☐ Enforcement of judgment (20)<br>**Miscellaneous Civil Complaint**<br>☐ RICO (27)<br>☐ Other complaint *(not specified above)* (42)<br>**Miscellaneous Civil Petition**<br>☐ Partnership and corporate governance (21)<br>☐ Other petition *(not specified above)* (43) |
|---|---|---|

2. This case ☐ is ☒ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☒ monetary   b. ☒ nonmonetary; declaratory or injunctive relief   c. ☒ punitive
4. Number of causes of action *(specify):*
5. This case ☐ is ☒ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: July 16, 2013

Sharon E. Glassey
(TYPE OR PRINT NAME)          (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov |
|---|---|---|

1  ROSNER, BARRY & BABBITT, LLP
   Hallen D. Rosner, SBN: 109740
2  Sharon E. Glassey, SBN: 226481
   10085 Carroll Canyon Road, Suite 100
3  San Diego, CA 92131
   TEL: (858) 348-1005
4  FAX: (858) 348-1150

5  Attorneys for Plaintiff

6

7

**ELECTRONICALLY FILED**
Superior Court of California,
County of Orange

**07/25/2013** at 09:00:54 AM
Clerk of the Superior Court
By Eleanor Sutter, Deputy Clerk

8          IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9              IN AND FOR THE COUNTY OF ORANGE

10                  CENTRAL JUSTICE CENTER

11

12  TRAVIS Z. GONZALES, an individual;

13              Plaintiff,

14      v.

15

16  CARMAX AUTO SUPERSTORES, LLC,
    a Virginia Corporation;
17  SANTANDER USA CORPORATION,
    INC., an Illinois Corporation;
18  SAFECO INSURANCE COMPANY OF
    AMERICA, a New Hampshire
19  Corporation; and DOES 1 through 75,
    inclusive,
20
              Defendants.
21

22

Case No.   30-2013-00664679-CU-CO-CJC
           Judge James J. Di Cesare

PLAINTIFF'S AFFIDAVIT OF VENUE
PURSUANT TO CALIFORNIA CIVIL
CODE §1780(c)

23      I, Travis Z. Gonzales, declare as follows:

24      1.      I am the Plaintiff in this action and make this declaration to the best of my

25  knowledge, information and belief of the facts stated herein.

26      2.      I purchased the 2007 Infiniti G35 that is the subject of this litigation from

27  CarMax Auto Superstores California, LLC, in the City of Costa Mesa, County of

28  Orange, State of California.

                                    1

1      Accordingly, these causes of action have been properly commenced in the proper

2  county or judicial district for trial.

3      I declare under penalty of perjury under the laws of the State of California that

4  the foregoing is true and correct and that this declaration was signed on the _3rd_ day

5  of _June_ , 2013, at _mission Viejo_ , California.

6        (Month)                   (City)

7

8                         Travis Gonzales

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### Court Reporters Office

**...ring Transcripts**

...District court civil and criminal transcripts may be ...ed by making financial arrangements with the individual : reporters. To identify which reporter to contact for a ...fic in-court matter before April 2002, please refer to the ...opriate docket entry on the civil or criminal docket sheet ...h is now electronically available on PACER. For ...ific in-court matters after April 2002, the court reporter ...nment schedule is on the website. Go to Court ...orter Schedule, then view all and select the date you need ...neck. Transcript orders from magistrate judge courts ...ld be placed with the Court Recording Section of the ...ords Department. Please refer to the website for the ...ssary telephone numbers, applicable fees, and ...tification of court reporter assignments. For more ...rmation, you can call the court reporter scheduler's office ...13-894-0658.

**...lering Realtime Connection**

...Realtime reporting connection should be requested in ...ance of the trial. Please contact the court reporter ...eduler's office to request the realtime connection. There ...separate charge for the realtime connection. Please refer ...he transcript rates to determine the cost. The only court ...orters who may connect to realtime and charge for it are ...erally certified realtime court reporters. Many reporters ...l provide the realtime connection if a daily transcript is ...ng ordered. The attorney must bring his or her own ...top computer.

**...dering Dailies**

...A request for a daily transcript should be made as soon ...possible before the trial begins. Please notify the court ...orter scheduler's office at least a week in advance of the ...al start date in order to request a daily. The daily will not ...mmence until financial arrangements have been made. ...ease do not walk into court on the first day of trial and ...quest a daily transcript as reporters need time to prepare.

### Touch Screens

...A touch screen is available in the lobby of each division. ...his device provides court addresses, hours, telephone ...umbers, a daily master calendar, and the weekly Post ...dictment Arraignment calendar.



UNITED STATES
DISTRICT COURT

CENTRAL DISTRICT
CALIFORNIA

~ ~ ~ ~ ~

WESTERN DIVISION
U.S. Courthouse
Clerk's Office, Room G-8
312 North Spring Street
Los Angeles, California 90012
213-894-1565

~ ~ ~ ~ ~

SOUTHERN DIVISION
Ronald Reagan Federal Building and
Courthouse
Clerk's Office, Room 1-053
411 West 4th Street
Santa Ana, California 92701-4516
714-338-4750

~ ~ ~ ~ ~



## PACER

PUBLIC ACCESS TO COURT
ELECTRONIC RECORDS



PACER SERVICE CENTER
P.O. Box 780549
San Antonio, TX 78278-0549
Phone: (800) 676-6856
Email: pacer@psc.uscourts.gov

...e United States District Court, Central District of
...fornia is one of the largest federal courts in the nation.
...clerk's office has put this brochure together to provide a
...k reference for attorneys and the general public regarding
...ervices that are currently available. Feedback and
...estions as to how we might improve our service are
...ys appreciated.

### Website

...formation about the district court may be obtained on-
... Users can gather information about attorney admissions
...filing procedures; review master and daily calendars,
...irements for court appearances, Local Rules, General
...ers, and recently issued and published opinions; obtain
...nsive attorney assistance information and available court
...ices; download court forms, and keep apprised of recent
...vations in the clerk's office. Visit the court's website at
...v.cacd.uscourts.gov.

### Office Hours

...he clerk's office hours are 10:00 a.m. - 4:00 p.m., Monday
...day, excluding court observed holidays. The drop-off
...service has been discontinued. For emergency filings
...veen 4:00 p.m. - 5:00 p.m., call Western Division: 213-
...2127; Southern Division: 714-338-4764/4760; Eastern
...ision: 951-328-4470. After 5:00 p.m., call 213-894-2485.

### WebPACER

...he "Public Access to Court Electronic Records" (PACER)
... browser based electronic retrieval system that provides
...inal and civil summaries and docket information using a
...puter terminal. PACER also provides access to images of
...ronically filed court documents. The PACER service is
...lable 24 hours a day, including weekends. To establish a
...CER account, contact the PACER Service Center: 800-
...6856.

### Records

...ll pending criminal, civil, magistrate, and multi-district
...ation (MDL) cases may be reviewed, at no charge, at the
...rk's office. Case files and dockets may be viewed on the
...ne day as requested unless the requested material is
...vailable. Certain closed cases are located at the court's
...rage facility and may be ordered, viewed and copies
...ained directly from National Archives and Records
...ministration (NARA) at 951-956-2000. You will need to
...vide the accession, location and box numbers to NARA
... file retrieval. This information may be obtained from the
...'- website at www.cacd.uscourts.gov/nara. If there are
...sults, call Western Division: 213-894-3863, email

---

to records_execpt@cacd.uscourts.gov; Southern Division:
338-4785; Eastern Division: 951-328-4450. To identify which
clerk's office maintains the case file you wish to view, please
refer to the prefix of the case number (two digits after the
letters represent the filing year; for example, 09 is year 2009)
as follows:

**Western Division (Los Angeles)**
CV 09-0000 - civil      CR 09-0000 - criminal
**Southern Division (Santa Ana)**
SACV 09-0000 - civil      SACR 09-0000 - criminal
**Eastern Division (Riverside)**
EDCV 09-0000 - civil      EDCR 09-0000 - criminal
There is a charge for copies, certifications, and
exemplifications. For more information on closed or
archived court records, visit the court's website at
www.cacd.uscourts.gov/records.

### Photocopy Service

Photocopy services are available from outside copy
services. Please note that exemplifications and certifications
must still be obtained from the clerk's office. For payment
options, contact the appropriate vendors: Western Division:
213-253-9413; Southern Division: 714-543-8123; Eastern
Division: 951-328-4470.

### Interpreter Services

The interpreter services section of the clerk's office
provides interpreters for all court proceedings instituted by
the United States that require the use of a language other than
English. The section also makes interpreter referrals in
response to inquiries from law firms and the general public in
cases where court-appointed interpreters are not indicated.
For further information, please call 213-894-4370 or visit the
court's website at www.cacd.uscourts.gov/interpreters.

### Jury Section

The court's website offers valuable information to prospective
jurors. You may see responses to frequently asked questions;
read the General Order 07-10 regarding the selection of
Grand and Petit jurors; download the jury handbook; review
jury information for all three divisions; and verify your
status/instructions utilizing the Automated Juror Information
System (AJIS). Submit questions or comments to the jury
section at jury@cacd.uscourts.gov. Wired and wireless
Internet access is available in jury assembly rooms.

### Attorney Work Room

For attorneys, a work room is located on the second floor
of the Spring Street Courthouse, on the first floor of the

---

Reagan Federal Building and
third floor of the Riverside (
have Pentium personal com
WordPerfect, and PACER;
Internet access; storage lock
conference rooms.

### Eviden

The clerk's office has evi
attorneys to use in court pr
connects an overhead proje
pictures for the judge, attor
charge for using the equipm
demand for its use, the equi
first-served basis. For mor
equipment, visit the court's
divisions: Western Division
Division at 714-338-4785;
4450 or 951-328-4451.

### Video

Videoconferencing allov
appear at court hearings by
monitors. The appropriate
contacted as to whether us
courtroom is permitted for
are minimal telephone cha
use of the unit. For mor
equipment, visit the court'
Space and Facilities Help I

With limited exceptions
governed by General Ord
Order 08-11. Please visit
www.cacd.uscourts.gov/c
Desk at 213-894-0242.

The Federal Pro Se (Se
located on the fifth floor,
Courthouse at 312 North
California. The Pro Se C
offers on-site informatio
are representing themselv
actions in the United Stat
information, call 213-385
website at www.cacd.uso

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# CIVILITY AND PROFESSIONALISM GUIDELINES

### Preamble

In its purest form, law is simply a societal mechanism for achieving justice. As officers of the court, judges and lawyers have a duty to use the law for this purpose, for the good of the people. Even though "justice" is a lofty goal, one which is not always reached, when an individual becomes a member of the legal profession, he or she is bound to strive towards this end.

gation costs and fails to advance the client's lawful interests. Perhaps just as importantly, this type of behavior causes the public to lose faith in the legal profession and its ability to benefit society. For these reasons, we find that civility and professionalism among advocates, between lawyer and client, and between bench and bar are essential to the administration of justice.

The following guidelines are de-

*...there is a growing sense that lawyers regard their livelihood as a business, rather than a profession.*

Unfortunately, many do not perceive that achieving justice is the function of law in society today. Among members of the public and lawyers themselves, there is a growing sense that lawyers regard their livelihood as a business, rather than a profession. Viewed in this manner, the lawyer may define his or her ultimate goal as "winning" any given case, by whatever means possible, at any cost, with little sense of whether justice is being served. This attitude manifests itself in an array of obstinate discovery tactics, refusals to accommodate the reasonable requests of opposing counsel re: dates, times, and places; and other needless, time-consuming conflicts between and among adversaries. This type of behavior tends to increase costs of litigation and often leads to the denial of justice.

The Central District recognizes that, while the majority of lawyers do not behave in the above-described manner, in recent years there has been a discernible erosion of civility and professionalism in our courts. This disturbing trend may have severe consequences if we do not act to reverse its course. Incivil behavior does not constitute effective advocacy; rather, it serves to increase litigation costs and fails to advance the

signed to encourage us, the members of the bench and bar, to act towards each other, our clients, and the public with the dignity and civility that our profession demands. In formulating these guidelines, we have borrowed heavily from the efforts of others who have written similar codes for this same purpose. *The Los Angeles County Bar Association Litigation Guidelines,* guidelines issued by other county bar associations within the Central District, the *Standards for Professional Conduct within the Seventh Federal Judicial Circuit,* and the *Texas Lawyer's Creed* all provide excellent models for professional behavior in the law.

We expect that judges and lawyers will voluntarily adhere to these standards as part of a mutual commitment to the elevation of the level of practice in our courts. These guidelines shall not be used as a basis for litigation or for sanctions or penalties.

Nothing in these guidelines supersedes or modifies the existing Local Rules of the Central District, nor do they alter existing standards of conduct wherein lawyer negligence may be determined and/or examined.

### I. Guidelines

#### A. Lawyers' Duties to Their Clients

1. We will practice our profession with a continuing awareness that our role is to advance the legitimate interests of our clients. We will endeavor to achieve our clients' lawful objectives in legal transactions and in litigation as quickly and economically as possible.

2. We will be loyal and committed to our clients' lawful objectives, but we will not permit that loyalty and commitment to interfere with our duty to provide objective and independent advice.

3. We will advise our clients that civility and courtesy are expected and are not a sign of weakness.

4. We will treat adverse parties and witnesses with fairness and due consideration. A client has no right to demand that we act in an abusive manner or indulge in any offensive conduct.

5. We will advise our clients that we will not pursue conduct that is intended primarily to harass or drain the financial resources of the opposing party.

6. We will advise our clients that we reserve the right to determine whether to grant accommodations to opposing counsel in all matters that do not adversely affect our clients' lawful objectives. Clients have no right to instruct us to refuse reasonable requests made by other counsel.

7. We will advise our clients regarding availability of mediation, arbitration, and other alternative meth-

ods of resolving and settling disputes

8. We will advise our clients of the contents of this creed when undertaking representation.

## B. Lawyers' Duties to Other Counsel

### 1. Communications with Adversaries

a. We will adhere to all express promises and to agreements with other counsel, whether oral or in writing, and will adhere in good faith to all agreements implied by the circumstances or local customs.

b. When we reach an oral understanding on a proposed agreement or a stipulation and decide to commit it to writing, the drafter will endeavor in good faith to state the oral understanding accurately and completely. The drafter will provide the other counsel with the opportunity to review the writing. As drafts are exchanged between or among counsel, changes from prior drafts will be identified in the draft or otherwise explicitly brought to the attention of other counsel. We will not include in a draft matters to which there has been no agreement without explicitly advising other counsel in writing of the addition.

c. We will not write letters for the purpose of ascribing to opposing counsel a position he or she has not taken, or to create "a record" of events that have not occurred. Letters intended only to make a record should be used sparingly and only when thought to be necessary under all of the circumstances. Unless specifically permitted or invited by the court, letters between counsel should not be sent to judges.

### 2. Scheduling Issues

a. We will not use any form of discovery or discovery scheduling as a means of harassment.

b. We will consult other counsel regarding scheduling matters in a good faith effort to avoid scheduling conflicts.

c. We will endeavor to accommodate previously scheduled dates for hearings, depositions, meetings, conferences, vacations, seminars, or other functions that produce good faith calendar conflicts on the part of other counsel, where it is possible to do so without prejudicing the client's rights. If we have been given an accommodation because of a calendar conflict, we will notify those who have accommodated us as soon as the conflict has been removed.

d. We will notify other counsel and, if appropriate, the court or other persons, at the earliest possible time when hearings, depositions, meetings, or conferences are to be canceled or postponed. Early notice avoids unnecessary travel and expense of counsel and may enable the court to use the previously reserved time for other matters.

e. Unless time is of the essence, as a matter of courtesy we will grant first requests for reasonable extensions of time to respond to litigation deadlines. After a first extension, any additional requests for time will be considered by balancing the need for expedition against the deference one should ordinarily give to an opponent's schedule of personal and professional engagements, the reasonableness of the length of extension requested, the opponent's willingness to grant reciprocal extensions, the time actually needed for the task, and whether it is likely a court would grant the extension if asked to do so.

f. We will not request an extension of time solely for the purpose of unjustified delay or to obtain a tactical advantage.

g. We will not attach to extensions unfair and extraneous conditions. We may impose conditions for the purpose of preserving rights that an extension might jeopardize, or for seeking reciprocal scheduling concessions. We will not, by granting extensions, seek to preclude an opponent's substantive rights, such as his or her right to move against a complaint.

### 3. Service of Papers

a. We will not time the filing or service of motions or pleadings in any way that unfairly limits another party's opportunity to respond.

b. We will not serve papers sufficiently close to a court appearance so as to inhibit the ability of opposing counsel to prepare for that appearance or, where permitted by law, to respond to the papers.

c. We will not serve papers in order to take advantage of an opponent's known absence from the office or at a time or in a manner designed to inconvenience an adversary, such as late on a Friday afternoon or the day preceding a secular or religious holiday.

d. When it is likely that service by mail, even when allowed, will prejudice the opposing party, we will effect service personally or by facsimile transmission.

### 4. Depositions

a. We will take depositions only when actually needed to ascertain facts or information or to perpetuate testimony. We will not take depositions

2

for the purpose of harassment or to increase litigation expense.

b. We will not engage in any conduct during a deposition that would be inappropriate in the presence of a judge.

c. During depositions we will ask only those questions we reasonably believe are necessary for the prosecution or defense of an action. We will not inquire into a deponent's personal affairs or question a deponent's integrity where such inquiry is irrelevant to the subject matter of the deposition. We will refrain from repetitive or argumentative questions or those asked solely for purposes of harassment.

d. When defending a deposition, we will limit objections to those that are well founded and necessary to protect our client's interests. We recognize that most objections are preserved and need be interposed only when the form of a question is defective or privileged information is sought.

e. When a question is pending, we will not, through objections or otherwise, coach the deponent or suggest answers.

f. We will not direct a deponent to refuse to answer questions unless they seek privileged information or are manifestly irrelevant or calculated to harass.

g. When we obtain documents pursuant to a deposition subpoena, we will make copies of the documents available to opposing counsel at his or her expense, even if the deposition is canceled or adjourned.

5. **Document Demands**

a. We will carefully craft document production requests so they are limited to those documents we reason-

ably believe are necessary for the prosecution or defense of an action. We will not design production requests to harass or embarrass a party or witness or to impose an undue burden or expense in responding.

b. We will respond to document requests in a timely and reasonable manner and not strain to interpret the request in an artificially restrictive manner to avoid disclosure of relevant and non-privileged documents.

c. We will withhold documents on the grounds of privilege only where it is appropriate to do so

d. We will not produce documents in a disorganized or unintelligible manner, or in a way designed to hide or obscure the existence of particular documents.

e. We will not delay document production to prevent opposing counsel from inspecting documents prior to scheduled depositions or for any other tactical reason.

6. **Interrogatories**

a. We will carefully craft interrogatories so that they are limited to those matters we reasonably believe are necessary for the prosecution or defense of an action, and we will not design them to harass or place an undue burden or expense on a party.

b. We will respond to interrogatories in a timely and reasonable manner and will not strain to interpret them in an artificially restrictive manner to avoid disclosure of relevant and non-privileged information.

c. We will base our interrogatory objections on a good faith belief in their merit and not for the purpose of withholding or delaying the disclosure of relevant information. If

an interrogatory is objectionable in part, we will answer the unobjectionable part.

7. **Settlement and Alternative Dispute Resolution**

a. Except where there are strong and overriding issues of principle, we will raise and explore the issue of settlement in every case as soon as enough is known about the case to make settlement discussion meaningful.

b. We will not falsely hold out the possibility of settlement as a means for adjourning discovery or delaying trial.

c. In every case, we will consider whether the client's interest could be adequately served and the controversy more expeditiously and economically disposed of by arbitration, mediation, or other forms of alternative dispute resolution.

8. **Written Submissions to a Court, Including Briefs, Memoranda, Affidavits, Declarations, and Proposed Orders.**

a. Before filing a motion with the court, we will engage in more than a mere pro forma discussion of its purpose in an effort to resolve the issue with opposing counsel.

b. We will not force our adversary to make a motion and then not oppose it.

c. In submitting briefs or memoranda of points and authorities to the court, we will not rely on facts that are not properly part of the record. We may present historical, economic, or sociological data, if such data appears in or is derived from generally available sources.

3

d. In civil actions, we will stipulate to relevant matters if they are undisputed and if no good faith advocacy basis exists for not stipulating.

e. Unless directly and necessarily in issue, we will not disparage the intelligence, morals, integrity, or personal behavior of our adversaries before the court, either in written submissions or oral presentations.

f. We will not, absent good cause, attribute bad motives or improper conduct to other counsel or bring the profession into disrepute by unfounded accusations of impropriety.

g. We will not move for court sanctions against opposing counsel without first conducting a reasonable investigation, and unless fully justified by the circumstances and necessary to protect our client's lawful interests.

h. We will not cause any default or dismissal to be entered without first notifying opposing counsel, when we know his or her identity.

i. When a draft order is to be prepared by counsel to reflect a court ruling, we will draft an order that accurately and completely reflects the court's ruling. We will promptly prepare and submit a proposed order to other counsel and attempt to reconcile any differences before the draft order is presented to the court.

9. *Ex Parte* Communications With the Court

a. We will avoid *ex parte* communication on the substance of a pending case with a judge (or his or her law clerk) before whom such case is pending.

b. Even where applicable laws or rules permit an *ex parte* application or communication to the court, before making such an application or com-

munication we will make diligent efforts to notify the opposing party or his or her attorney. We will make reasonable efforts to accommodate the schedule of such attorney, so that the opposing party may be represented on the application.

c. Where the rules permit an *ex parte* application or communication to the court in an emergency situation, we will make such an application or communication only where there is a *bona fide* emergency such that the lawyer's client will be seriously prejudiced by a failure to make the application or communication on regular notice.

## C. Lawyers' Duties to the Court

1. We will speak and write civilly and respectfully in all communications with the court.

2. We will be punctual and prepared for all court appearances so that all hearings, conferences, and trials may commence on time; if delayed, we will notify the court and counsel, if possible.

3. We will be considerate of the time constraints and pressures on the court and court staff inherent in their efforts to administer justice.

4. We will not engage in any conduct that brings disorder or disruption to the courtroom. We will advise our clients and witnesses appearing in court of the proper conduct expected and required there and, to the best of our ability, prevent our clients and witnesses from creating disorder or disruption.

5. We will not write letters to the court in connection with a pending action, unless invited or permitted by the court.

6. Before dates for hearing or trials are set, or if that is not feasible, immediately after such date has been set, we will attempt to verify the availability of necessary participants and witnesses so we can promptly notify the court of any likely problems.

7. We will act and speak civilly to court marshals, court clerks, court reporters, secretaries, and law clerks with an awareness that they, too, are an integral part of the judicial system.

## D. Judges' Duties to Others

1. We will be courteous, respectful, and civil to the attorneys, parties, and witnesses who appear before us. Furthermore, we will use our authority to ensure that all of the attorneys, parties, and witnesses appearing in our courtrooms conduct themselves in a civil manner.

2. We will do our best to ensure that court personnel act civilly toward attorneys, parties and witnesses.

3. We will not employ abusive, demeaning, or humiliating language in opinions or in written or oral communications with attorneys, parties, or witnesses.

4. We will be punctual in convening all hearings, meetings, and conferences.

5. We will make reasonable efforts to decide promptly all matters presented to us for decision.

6. While endeavoring to resolve disputes efficiently, we will be aware of the time constraints and pressures imposed on attorneys by the exigencies of litigation practice.

7. Above all, we will remember that the court is the servant of the people, and we will approach our duties in this fashion.

4



# PACER
PUBLIC ACCESS TO COURT FILES

## PACER

Public Access to Court Electronic Records

(PACER) is an electronic public access service that allows users to obtain case information from federal courts. PACER is a service of the United States Judiciary, provided by the Administrative Office of the United States Courts.

PACER offers an inexpensive, easy-to-use alternative for obtaining case information from the Judiciary's Case Management and Electronic Case Files system (CM/ECF), without having to visit the courthouse. PACER allows an Internet user to request information about a particular case or party. The data is immediately available for printing or downloading.

## CM/ECF

CM/ECF is the federal courts' system used to manage cases and to allow attorneys to file case documents over the Internet.

Identifying requirements for the next generation of CM/ECF is in process. Refer to the "What's New with PACER" section of the PACER website, for information and updates to PACER and CM/ECF.

## HOW PACER WORKS

PACER offers convenient electronic access to:

- Case file documents and opinions
- Listings of all case parties
- Reports of case-related information
- Chronologies of events entered in the case record
- Claims registries
- Listings of new bankruptcy cases
- Judgments or case status
- PACER Case Locator
- Audio files of hearings



CTRONIC RECORDS

# REGISTRATION

To register for access, visit the PACER Service Center website at www.pacer.gov. Click on the Registration tab and select the account type. Then fill out an online form and provide a valid email address.

- Provide credit card information to establish an account and receive same- day access.

- Choose to register without credit card information, and you will receive account login information by U.S. mail, usually within one week.

There is no cost for registration.

# FEES and BILLING

Congress has authorized the Judiciary to charge fees to fund the costs of PACER and CM/ECF.

The Judicial Conference of the United States has set fees and conditions for services as follows:

- Eight cents per page for access via the Internet, with a total charge of any document, docket sheet, or case-specific report not to exceed $2.40, the fee for 30 pages

- Transcripts of federal court proceedings are not subject to the 30-page fee limit.

- Digital Audio files are available for $2.40 per file, for courts that provide the service

- Fees are waived for users who incur less than $10 of use in a quarterly billing cycle

- Parties entitled to documents as part of a legal process receive one free electronic copy

- Parties will be charged for replacement copies, whether in paper or electronic form

- Users are billed quarterly and are allowed to enter a client code of their own choosing to facilitate costs tracking

# Exhibit C

1 | ROSNER, BARRY & BABBITT, LLP
Hallen D. Rosner, SBN: 109740
2 | Sharon E. Glassey, SBN: 226481
10085 Carroll Canyon Road, Suite 100
3 | San Diego, CA 92131
TEL: (858) 348-1005
4 | FAX: (858) 348-1150

5 | Attorneys for Plaintiff

6

7

ELECTRONICALLY FILED
Superior Court of California,
County of Orange

07/25/2013 at 09:00:54 AM

Clerk of the Superior Court
By Eleanor Sutter, Deputy Clerk

8 | IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9 | IN AND FOR THE COUNTY OF ORANGE

10 | CENTRAL JUSTICE CENTER

11

12 | TRAVIS Z. GONZALES, an individual;

13

Plaintiff,

14

v.

15

16 | CARMAX AUTO SUPERSTORES, LLC,
a Virginia Corporation;
17 | SANTANDER USA CORPORATION,
INC., an Illinois Corporation;
18 | SAFECO INSURANCE COMPANY OF
AMERICA, a New Hampshire
19 | Corporation; and DOES 1 through 75,
inclusive,
20
Defendants.
21

22

Case No.

30-2013-00664679-CU-CO-CJC

Judge James J. Di Cesare

PLAINTIFF'S STATEMENT OF
ACTUAL AND PUNITIVE DAMAGES
[Code of Civ. Proc. §425.115

23 | NOTICE TO DEFENDANTS:

24 | In addition to his demand for rescission of the purchase contract and for

25 | attorneys' fees and costs, Plaintiff reserves the right to seek $49,000 in actual damages,

26 | and $25,000 in punitive damages. Both sums are subject to proof at trial.

27 | ///

28 | ///

1

STATEMENT OF DAMAGES

1 and Plaintiff reserves all rights to seek and obtain additional damages when he seeks
2 a judgment in the lawsuit filed against you.
3
4 Dated: July 24, 2013                    ROSNER, BARRY & BABBITT, LLP
5
6 By: _____
       Sharon E. Glassey
7      Attorney for Plaintiff
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

2

STATEMENT OF DAMAGES

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES

This case has been assigned to District Judge _____Cormac J. Carney_____ and the assigned Magistrate Judge is _____Robert N. Block_____ .

The case number on all documents filed with the Court should read as follows:

## SACV13-1391-CJC (RNBx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge.

Clerk, U. S. District Court

September 6, 2013

Date

By  MDAVIS

Deputy Clerk

---

## NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

**Subsequent documents must be filed at the following location:**

☐ **Western Division**
312 N. Spring Street, G-8
Los Angeles, CA 90012

☒ **Southern Division**
411 West Fourth St., Ste 1053
Santa Ana, CA 92701

☐ **Eastern Division**
3470 Twelfth Street, Room 134
Riverside, CA 92501

**Failure to file at the proper location will result in your documents being returned to you.**

---

**CIVIL COVER SHEET**

| **I. (a) PLAINTIFFS** ( Check box if you are representing yourself ☐ ) | **DEFENDANTS** ( Check box if you are representing yourself ☐ ) |
|---|---|
| TRAVIS Z. GONZALES | CARMAX AUTO SUPERSTORES CALIFORNIA, LLC<br>SANTANDER CONSUMER USA, INC.<br>SAFECO INSURANCE COMPANY OF AMERICA |
| **(b) Attorneys** (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)<br>HALLEN D. ROSNER, ESQ./ROSNER, BARRY & BABBITT, LLP<br>10085 CARROLL CANYON ROAD, SUITE 100<br>SAN DIEGO CA 92131<br>TEL: (858) 348-1005 | **(b) Attorneys** (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)<br>KURT A. SCHLICHTER, ESQ./SCHLICHTER & SHONACK, LLP<br>3601 AVIATION BLVD., SUITE 2700<br>MANHATTAN BEACH CA 90266<br>☒ TEL: (310) 643-0111 |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff

☐ 3. Federal Question (U.S. Government Not a Party)

☐ 2. U.S. Government Defendant

☒ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☐ 1. Original Proceeding

☒ 2. Removed from State Court

☐ 3. Remanded from Appellate Court

☐ 4. Reinstated or Reopened

☐ 5. Transferred from Another District (Specify)

☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☐ Yes ☒ No (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☐ No      ☐ **MONEY DEMANDED IN COMPLAINT: $**

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 U.S.C. 1331; 28 U.S.C. 1441. Alleged violations of Song-Beverly Consumer Warranty Act, Consumer Legal Remedies Act, unfair business practices, fraud and deceit. Plaintiff seeks general and punitive damages, attorney's fees and equitable relief, including injunctive relief.

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | **TORTS** | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **PERSONAL PROPERTY** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | ☒ 370 Other Fraud | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 371 Truth in Lending | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 380 Other Personal Property Damage | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 385 Property Damage Product Liability | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | **BANKRUPTCY** | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | ☐ 422 Appeal 28 USC 158 | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 423 Withdrawal 28 USC 157 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | ☐ 190 Other Contract | ☐ 350 Motor Vehicle | **CIVIL RIGHTS** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle Product Liability | ☐ 440 Other Civil Rights | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 196 Franchise | ☐ 360 Other Personal Injury | ☐ 441 Voting | **LABOR** | |
| ☐ 896 Arbitration | **REAL PROPERTY** | ☐ 362 Personal Injury-Med Malpratice | ☐ 442 Employment | ☐ 710 Fair Labor Standards Act | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/ Accomodations | ☐ 720 Labor/Mgmt. Relations | |
| | ☐ 220 Foreclosure | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | ☐ 445 American with Disabilities-Employment | ☐ 740 Railway Labor Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 446 American with Disabilities-Other | ☐ 751 Family and Medical Leave Act | |
| | | | ☐ 448 Education | ☐ 790 Other Labor Litigation | |
| | | | | ☐ 791 Employee Ret. Inc. Security Act | |

**FOR OFFICE USE ONLY: Case Number:** SACV13-1391

**AFTER COMPLETING PAGE 1 OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED ON PAGE 2.**

CV-71 (02/13) | CIVIL COVER SHEET | Page 1 of 2

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?   ☒ NO   ☐ YES

If yes, list case number(s):

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?   ☒ NO   ☐ YES

If yes, list case number(s):

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.

☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| ORANGE COUNTY | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.

☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | VIRGINIA (CARMAX AUTO SUPERSTORES CALIFORNIA, LLC) |
| | TEXAS (SANTANDER CONSUMER USA INC.) |
| | MASSACHUSETTS (SAFECO INSURANCE COMPANY OF AMERICA) |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
**NOTE: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| ORANGE COUNTY | |

*Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
**Note:** In land condemnation cases, use the location of the tract of land involved

**X. SIGNATURE OF ATTORNEY (OR SELF-REPRESENTED LITIGANT):**   DATE: September 6, 2013

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |